DETELICH, Appellee,

v.

GECIK, Appellant.

[Cite as *Detelich v. Gecik* (1993), 90 Ohio App.3d 793.]

Court of Appeals of Ohio,
Geauga County.

No. 93–G–1764.

Decided Oct. 4, 1993.

*A.P. Leary,* for appellee.

*David M. Ondrey,* for appellant.

NADER, Judge.

This is an appeal from a judgment in the Geauga County Court of Common Pleas ordering appellant to pay prejudgment interest on a jury award of $83,000.

On June 20, 1987, appellant Richard J. Gecik and appellee Charlotte A. Detelich were involved in an automobile accident. Appellee's left side was injured, including a fractured clavicle, six fractured ribs, a collapsed lung and lacerations on her left arm. Appellee was hospitalized for three days and could not work for two months.

Appellee subsequently filed an action on February 21, 1989 for personal injuries sustained in the accident. Appellant conceded his liability in the accident, and the action proceeded to trial on the issue of damages. The jury returned an award of $83,000 on February 26, 1991. On March 8, 1991, appellee filed a motion for prejudgment interest pursuant to R.C. 1343.03(C). On April 17, 1991, the trial court entered an order granting appellee's motion for prejudg-

ment interest. Appellant appealed that order to this court on the basis that the trial court failed to hold an evidentiary hearing on appellee's motion for prejudgment interest.

In *Detelich v. Gecik* (Mar. 27, 1992), Geauga App. No. 91–G–1642, unreported, 1992 WL 190593, this court entered an opinion holding that the trial court erred in awarding prejudgment interest when there had been no evidential submissions on the motion. As a result, this court reversed and remanded the matter to the trial court for further proceedings.

A hearing on the motion for prejudgment interest was subsequently held in the trial court on February 1, 1993. The trial court then entered a judgment granting appellee's motion for prejudgment interest. Appellant timely appealed, asserting the following as error:

"The trial court erred in awarding plaintiff prejudgment interest."

R.C. 1343.03(C) governs the award of prejudgment interest. It states:

"Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."

The trial court is vested with the discretion to decide whether a party has made a good faith effort to settle the case. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248. Thus, the trial court's decision will not be overturned absent a showing of abuse of discretion. *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 615 N.E.2d 1022. The term "abuse of discretion" " 'connotes more than an error of law or of judgment; it implies an unreasonable, arbitrary or unconscionable attitude * * *.' *Steiner v. Custer* (1940), 137 Ohio St. 448, [19 O.O. 148, 31 N.E.2d 855], paragraph two of the syllabus; *Conner v. Conner* (1959), 170 Ohio St. 85 [9 O.O.2d 480, 162 N.E.2d 852]; *Rohde v. Farmer* (1970), 23 Ohio St.2d 82 [52 O.O.2d 376, 262 N.E.2d 685]; and *State v. Adams* (1980), 62 Ohio St.2d 151 [16 O.O.3d 169, 404 N.E.2d 144]. 'Arbitrary' means 'without adequate determining principle; * * * not governed by any fixed rules or standard.' Black's Law Dictionary (5 Ed.). 'Unreasonable' means 'irrational.' *Id.*' " (Multiple quotation marks deleted in part.) *Cedar Bay Constr., Inc. v. Fremont* (1990), 50 Ohio St.3d 19, 22, 552 N.E.2d 202, 205.

■■ In *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 159, 25 OBR 201, 203, 495 N.E.2d 572, 574, the Ohio Supreme Court held that:

"A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party."

The court stated additionally that:

"The statute requires all parties to make an honest effort to settle a case. A party may have 'failed to make a good faith effort to settle' even when he has not acted in bad faith. (Footnote omitted.) *Mills v. Dayton* (1985), 21 Ohio App.3d 208, 21 OBR 222, 486 N.E.2d 1209, and *Dailey v. Nationwide Demolition Derby, Inc.* (1984), 18 Ohio App.3d 39, 18 OBR 108, 480 N.E.2d 110, approved; *Ware v. Richey* (1983), 14 Ohio App.3d 3, 14 OBR 6, 469 N.E.2d 899, disapproved." *Id.*

In a footnote, the court defined "bad faith" as " 'a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud. It also embraces actual intent to mislead or deceive another.' " *Id.*, 25 Ohio St.3d at 159, 25 OBR at 203, 495 N.E.2d at 574, fn. 1, quoting *Hoskins v. Aetna Life Ins. Co.* (1983), 6 Ohio St.3d 272, 276, 6 OBR 337, 340, 452 N.E.2d 1315, 1319.

However, the court stated in a later opinion, after citing the four-prong test set forth in *Kalain:*

"Furthermore, a lack of good faith means more than poor judgment or negligence; rather, it imports a dishonest purpose, conscious wrongdoing or ill will in the nature of fraud. *Ware v. Richey* (1983), 14 Ohio App.3d 3, 9 [14 OBR 6, 12, 469 N.E.2d 899, 905]." *Villella v. Waikem Motors, Inc.* (1989), 45 Ohio St.3d 36, 42, 543 N.E.2d 464, 470.

Thus, the court incorporated into its opinion a standard which it had previously stated was not appropriate and cited the *Ware* case, which it had expressly disapproved in *Kalain.*

Facing this apparent contradiction, the Cuyahoga County Court of Appeals concluded that the *Villella* language "about the definition of lack of good faith appear[s] to be dicta." *Marous v. Ohio Bell Tel. Co.* (1992), 80 Ohio App.3d 306, 309, 609 N.E.2d 192, 194. The *Marous* court reached this conclusion because "the sole reason for holding that the award had to be vacated [in *Villella* ], was the fact that it was on punitive damages. The statements concerning the definition of a lack of good faith were merely dicta and we are still bound by *Kalain.*" *Id.* at 310, 609 N.E.2d at 194.

This conclusion appears to be correct in light of the most recent Supreme Court decision on prejudgment interest. In *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 615 N.E.2d 1022, the court made no reference to its decision in *Villella*, citing only *Kalain* and the four-prong test set forth in that decision. Thus, it appears that a finding of bad faith, as defined in the *Villella* decision, is unnecessary. Rather, to determine whether a party has failed to make a good faith effort to settle under R.C. 1343.03(C), it is necessary only to apply *Kalain*'s four-prong test.

■ In the case *sub judice*, there is no allegation that appellant failed to fully cooperate in discovery proceedings. Thus, the first prong of the *Kalain* test is uncontroverted. Nor is there any evidence that appellant attempted to unnecessarily delay the proceedings, as the third prong of the test prohibits. Thus, the trial court's holding was based on a finding that appellant failed to rationally evaluate his risk and, as a result, failed to make a good faith monetary settlement offer.

Motorists Insurance Company ("Motorists") insured appellant with a $50,000 policy. Appellee demanded $40,000 in settlement prior to filing suit. Motorists offered appellee $25,000. Motorists retained attorney David E. Lowe to represent appellant Gecik once suit had been filed. Lowe testified in the hearing below that he initially valued the suit at $35,000. He testified that this valuation was based on the severity of the injuries and the degree of permanence of the injuries. In a letter to Motorists dated June 20, 1989, Lowe advised that his valuation had increased to $37,500 after reviewing a subsequent medical report which detailed appellee's soft tissue injuries and limitation in motion.

Attorney Jim Evans, a representative of Motorists, declined Lowe's recommendation that the valuation be increased in a letter to Lowe dated June 26, 1989. In a letter dated July 8, 1989, Lowe advised Evans that appellee would not likely reduce the statement of damages to less than $75,000, and was looking to underinsurance. Lowe testified that appellant Gecik had retained personal counsel, attorney Berk, who had communicated to Lowe that his valuation of the case was in excess of $50,000.

On November 16, 1989, Lowe deposed appellee and in a letter to Evans dated November 18, 1989, advised Evans that after observing appellee and her scarring, the $37,500 valuation might be conservative. He further stated:

"I would seriously urge you to consider increasing your offer, as I believe we are exposed in this case. This could very well be a limits case."

Evans subsequently declined to increase his settlement offer, testifying below that he did not believe that there was any functional disability to the injuries. However, appellee had submitted videotaped depositions of two doctors who

testified that there was permanence to appellee's injuries and scarring, including a degree of functional disability in her shoulder and upper spinal motion. The deposition of Dr. Robert D. Zaas, M.D., an orthopedic specialist who testified to appellee's functional disability was taken on November 29, 1990, and was filed on December 20, 1990. The deposition of Dr. DeWayne Richey, M.D., a plastic surgeon, was taken on December 20, 1990, and was filed on January 24, 1991. Thus, testimony regarding the permanence and severity of appellee's injuries was available to Motorists well in advance of the February 26, 1991 trial date.

In December 1990, Motorists increased its offer to $30,000. However, Evans testified that this increase represented a reflection of the uncertainties and expense of trial, not an increase in valuation, despite the medical testimony adduced by appellee and appellant's failure to introduce evidence to the contrary. Thus, Evans relied on nothing but his own judgment, ignoring the evaluation of the doctors and attorneys, failing to read appellee's depositions and choosing not to seek other medical evaluation, in determining not to increase the settlement offer. As a result, Evans failed to rationally evaluate the potential liability and failed to make a good faith monetary settlement offer.

The trial court's conclusion that appellant failed to make a good faith effort to settle the case was supported by an abundance of competent, credible evidence. See *Smith v. Jaskowiak* (May 17, 1991), Trumbull App. No. 90–T–4365, unreported, 1991 WL 84230. As a result, we cannot conclude that the trial court abused its discretion in granting appellee's motion for prejudgment interest. To the contrary, such intransigence epitomizes failure to make good faith efforts to settle litigation and is a particular target of R.C. 1343.03(C).

Appellants also contend that the trial court erred in relying on its own recollection of events in making the decision to award prejudgment interest, citing our decision in *Smith v. Jaskowiak, supra.* While it is correct that when a trial court is relying on its own recollection, beyond the record, "the concepts of Due Process and Fundamental Fairness require that he could either submit himself as a witness on his own recollection of events in the case which are not of record and that are pertinent and material on the issue of good faith; or he could achieve a stipulation with the parties involved as to his specific knowledge of the settlement exercises. In the alternative, the judge could provide a narrative statement in the form of an exhibit that becomes part of the record. The point is to provide some method of making a record of the judge's recollections, and, to provide a way for counsel to controvert those recollections prior to the final entry of judgment." *Smith* at 10.

However, the *Smith* opinion stated further that "the court's finding that appellants merely offered $3,400 does coincide with the testimony set forth in the

record, and therefore, appears to be based on more than the court's recollection." *Id.* at 11.

The same is true in the instant case. Although the court states in its opinion that it "repeatedly advised defendant's attorney * * * that the value of the case clearly exceeded the $50,000 limit of liability in defendant's policy," and that "[r]eview of the insurer's claims file and the other evidence at this hearing serves only to highlight and reinforce this Court's analysis and conclusions of April 16, 1991," the evidence adduced at the hearing on the motion supports the trial court's decision. Furthermore, the court did not include any findings of fact which were based solely on recollection, as was the case in *Smith.* We decline, therefore, to overturn the court's decision on this basis.

In accordance with the foregoing analysis, the judgment of the trial court ordering appellant to pay prejudgment interest is hereby affirmed.

*Judgment affirmed.*

FORD, P.J., and JOSEPH E. MAHONEY, J., concur.