OPINION
The instant appeal stems from three final judgments of the Mahoning County Court of Common Pleas. Appellants, D V Trucking and Gregory D. Huff, essentially seek the reversal of the trial court's decision to award damages to appellees, Christine and J.R. Hollobaugh, in accordance with the jury verdict. For the following reasons, we affirm all three judgments of the trial court, except as to the award of future lost wages for J.R. Hollobaugh.
The subject matter of this action concerns an accident which occurred at appellees' residence on State Route 165 in Greenford, Ohio. On the afternoon of September 30, 1996, appellees were working in the front yard of their property, attempting to repair certain railroad ties which framed a sidewalk and a flower bed. At approximately 4:00 p.m., a dump truck owned by appellant D V Trucking was travelling on State Route 165, approaching appellees' residence from the west. The dump truck was carrying a load of sand and was being driven by appellant Huff, who was acting in the course of his employment with D V Trucking.
As the dump truck went over the crest of a small hill located a short distance from appellees' residence, appellant Huff applied the brakes as the truck hit a pothole in the road. The combined effect of applying the brakes and hitting the pothole caused the lug nuts on the right rear axle of the dump truck to break. In turn, this caused the outside tire-and-rim assembly ("tire") to spin off the axle and roll into the yard of appellees' neighbor.
After bouncing off a vehicle parked in the neighbor's yard, the tire continued to roll downhill into appellees' front yard, heading directly toward the spot where appellees were working. Upon passing by appellees, the tire traveled back toward State Route 165, crossed over the road, and finally came to rest in the parking lot of a church.
An emergency medical team was dispatched to appellees' residence immediately after the accident. Christine Hollobaugh told the paramedics that the tire had hit her on the right side of her body; accordingly, the paramedics treated her and transported her to a local hospital. J.R. Hollobaugh also told the paramedics that he had been hit by the tire, but refused any treatment from the paramedics.
In the months following this accident, Christine was treated by two physicians for a soft tissue sprain of her cervical and thoracic spine. After undergoing rehabilitative therapy for a short period, she substantially recovered from her injury and was released from the doctors' care in January 1997.
On the date of the accident, J.R. Hollobaugh only claimed that the tire had hit him in the right knee as he tried to jump over it. However, in the weeks after the accident, J.R. began to complain that his back had been injured. According to J.R., when the tire hit him in the knee as he jumped to avoid it, he was flipped into the air and landed on a stone in the flower garden.
Like his wife, J.R. also saw two doctors in the months following the accident. The second doctor diagnosed J.R. as having a soft tissue trauma to the thoracic and lumbar regions of his back. After requiring J.R. to engage in rehabilitative therapy for a short period, the second doctor released J.R. from his care because Hollobaugh's back had improved dramatically.
Prior to the accident, J.R. had worked for communications companies as a lineman. In the months following his release from the second doctor's care in January 1997, he tried to continue to perform this type of work. However, because this work required J.R. to climb telephone poles while carrying heavy equipment, his back problem soon returned and he often had to ask other linemen to assist him in completing the work. As a result, J.R. quit his job as a lineman after approximately ten months and has not held any other type of job during the interim period.
In January 1998, J.R. saw a third doctor about his back. This doctor informed J.R. that the soft tissue injury to his back was permanent and that he will probably be unable to work as a lineman again. This doctor also recommended that J.R. see a psychiatrist to help him overcome some of the psychological problems he has developed as a result of not being able to work as a lineman. In turn, the psychiatrist has diagnosed J.R. as suffering from depression and post traumatic stress disorder, and has been treating J.R. for these problems during the interim period.
In November 1997, J.R. and Christine, appellees, filed the instant action against appellants. As the primary basis for their complaint, appellees alleged that appellants had acted negligently in maintaining and operating the dump truck in such a manner as to cause the tire to come off the right rear axle. For their relief, they requested money damages covering past, present and future damages.
After the parties had engaged in considerable discovery, the matter was tried before a jury in September 1999. Immediately prior to trial, appellants agreed to stipulate that the fact that the tire had become separated from the dump truck was directly attributable to their negligence. Thus, the case went forward solely upon the issues of proximate cause and damages. As part of this pretrial agreement, appellees also agreed not to pursue their claim for punitive damages.
Also prior to trial, appellants submitted a motion in limine to stop appellees from making any reference to the fact that the dump truck, at issue, had previously lost tires on three prior occasions. Concluding that testimony on these prior events would not be prejudicial, the trial court overruled appellants' motion and allowed appellees to refer to the prior events in their opening statement to the jury.
Following a four-day trial, the jury returned a verdict in favor of appellants. As to Christine, the jury found that her total damages had been $100,000. As to J.R., the jury awarded him $400,000, which included $75,000 for future lost income, $35,000 for future pain and suffering, and $5,000 for future medical bills and expenses.
After the trial court had entered judgment on the jury verdict, appellants filed a dual motion for a new trial and for judgment notwithstanding the verdict. As the basis for this motion, appellants again challenged the trial court's determination on the motion in limine
and also argued that the court had erred in allowing the jury to consider the question of whether J.R. was entitled to receive future damages. After appellees had responded to the dual motion, the trial court overruled both aspects of the motion in a separate judgment.
Immediately following the conclusion of the trial, appellees moved for prejudgment interest under R.C. 1343.03(C). After holding an evidentiary hearing on the motion, the trial court issued a third judgment granting prejudgment interest for appellees. In support of this ruling, the court expressly found that appellants had failed to make any good faith effort to settle the case prior to trial.
In now appealing all three of the foregoing judgments, appellants have assigned the following as error:
 "1. The trial court erred by overruling the defendants' motion in limine and objection during plaintiffs' opening statement, to exclude evidence or statements concerning the prior negligent acts of DV Trucking and Gregory Huff when negligence had been admitted and no claims for punitive damages were pending, thereby permitting the plaintiffs to reference the prior acts in their opening statement without thereafter presenting any evidence of the prior incidents during the course of the trial.
 "2. The trial court erred in instructing the jury on future damages in the absence of any testimony or other evidence relating to future lost earnings, medical expenses, or pain and suffering being introduced during the trial of the plaintiffs' case.
 "3. The trial court erred in overruling the defendants' motion notwithstanding the verdict and/or remittitur; or, in the alternative, motion for new trial.
 "4. The trial court erred in granting the plaintiffs' motion for prejudgment interest."
 Under the first assignment in this appeal, appellants challenge the merits of the trial court's decision to deny their motion in limine. Appellants maintain that once they had admitted their negligence and appellees had agreed not to pursue their claim for punitive damages, the fact that a tire had fallen off the dump truck on three prior occasions was no longer relevant to the remaining issues. Specifically, they argue that any reference to the prior occasions only served to inflame or prejudice the jury.
The trial court's ruling on the motion in limine was made during a conference in chambers immediately before the trial began. The trial court stated to the counsel for both sides that it would allow references to the prior occasions because it did not believe that such references would have any effect on the jury. As a result, during his opening statement to the jury, appellees' counsel indicated that "[t]he evidence would be that this truck lost a tire and wheel on at least three occasions before this accident." After this statement was made, neither side made any further reference to this point during the rest of the trial.
Pursuant to Evid.R. 401, evidence is considered "relevant" if it has any tendency to establish the existence of a fact which would be consequential to the determination of the action. Given that, by the start of the trial in this case, appellees had admitted that they had acted negligently in regard to the tire, the only issues remaining to be tried pertained to proximate cause and the extent of appellees' damages. Obviously, the fact that a tire had fallen off the dump truck three prior times would not tend to establish any factual point which would be of consequence to those two issues. Therefore, since any evidence pertaining to the prior three occasions would not have been admissible under Evid.R. 402, it follows that the trial court should not have allowed appellees' counsel to refer to the matter in the opening statement.
Nevertheless, this court concludes that appellants' first assignment does not state a basis for reversing the entire verdict because appellants failed to properly preserve the error for appellate review. As a general proposition, the filing of a pretrial motion in limine is insufficient to preserve an error as to the admission of evidence; instead, even if the motion is denied prior to trial, the moving party must object during the course of the trial before it can be reviewed on appeal. Kovshovik v. Mandik (Sept. 29, 1999), Columbiana App. No. 97 CO 41, unreported, 1999 Ohio App. Lexis 4692. If the party fails to renew the objection, the issue is considered waived except for the purpose of determining whether a plain error occurred. Flannery v. Ohio ValleyOrthopaedics Sports Medicine, Inc. (Nov. 3, 2000), Hamilton App. Nos. C-990807 and C-000056, unreported, 2000 Ohio App. Lexis 5080.
Our review of the trial transcript in this appeal shows that appellants did not renew their objection when appellees' counsel referred to the three prior occasions during his opening statement. In addition, the trial transcript shows that the failure to object was planned by appellants' counsel. After the trial court had made its ruling on the motion in limine during the conference in chambers, appellants' counsel told appellees' counsel that, unless appellees' counsel disagreed, he did not want to make an objection when the reference to the prior occasions was made to the jury. Appellees' counsel replied that he had no problems with this proposed procedure; however, the trial court never stated whether it agreed with the procedure.
In essence, counsel for both sides stipulate that the normal procedure would not be followed in regard to the need for an objection. Under Ohio law, this type of stipulation is not permissible. In Welsh v.Brown-Graves Lumber Co. (1978), 58 Ohio App.2d 49, the Ninth Appellate District held that a stipulation is not enforceable if it conflicts with a rule of civil procedure. Although not expressly stated in Welsh, this holding is based upon the underlying proposition that the parties to an action cannot stipulate as to legal matters which must be determined by the court. See 89 Ohio Jurisprudence 3d (1989) 111-112, Trial, Section 75. Accordingly, it has also been stated that a stipulation cannot change the mode of proceeding in a trial and cannot change the application of the rules of evidence. Id.; 89 Ohio Jurisprudence 3d (1989) 114-115, Trial, Section 77.
While the foregoing precedent is not directly on point to the situation in this case, logic dictates that counsels' stipulation concerning the need for an objection should also not be enforceable. A ruling on a motion in limine is a tentative decision through which the trial court can indicate to the parties what its ultimate determination on the evidentiary question might be. State v. Risk (May 11, 1999), Putnam App. No. 12-98-13, unreported, 1999 Ohio App. Lexis 2449. Under this procedure, a trial court does not make its final determination on the matter until the issue is raised before the jury during the course of the trial, for it is only at that point that the court can consider the contested evidence or statement in the context of the entire trial. If the parties are allowed to waive the requirement of renewing the objection, then the trial court will not have the opportunity to correct any error which may become obvious when the evidence or statement is viewed in context.
Therefore, as counsels' stipulation in this case cannot be enforced, appellants did not properly preserve the error which occurred when appellees' counsel referred to the three prior incidents involving the dump truck's tire. As a result, the reference must be a plain error before it can form the basis of reversing the jury verdict.
In the context of a civil action, an appellate court can invoke the doctrine of plain error only when the error had such an adverse effect upon the trial that, if the judgment is allowed to stand, public confidence in judicial proceedings would be harmed. Berge v. ColumbusCommunity Cable Access (1999), 136 Ohio App.3d 281, 316. In light of our review of the trial transcript, this court concludes that the error in this case did not rise to the level of a plain error. Although the existence of the error raises the specter that the award of damages may have been based upon improper passion or prejudice, the record shows that it is still more likely that the jury verdict was predicated upon the considerable proper evidence which, except as to the award of future lost wages for J.R. Hollobaugh, appellees presented in support of their case. Thus, the first assignment of error in this appeal lacks merit.
Under their next assignment, appellants submit that the trial court erred in allowing the jury to consider certain issues because appellees failed to present sufficient evidence on those issues. Specifically, they maintain that the jury should not have been given the opportunity to award any type of future damages to J.R. Hollobaugh because appellees did not present any expert testimony establishing that such damages will be incurred in the future.
As a general proposition, a trial court can instruct a jury on a specific issue when sufficient evidence was presented to warrant a jury finding on that issue. Murphy v. Carrollton Mfg. Co. (1991),61 Ohio St.3d 585, 591. In turn, a party has presented sufficient evidence on an issue when the state of the evidence is such that a reasonable person might reach the conclusion needed to satisfy the proposed instruction. Feterle v. Huettner (1971), 28 Ohio St.2d 54.
In regard to an award of damages, it has been held:
 "As a general rule, once a plaintiff establishes a right to damages, that right will not be denied because the damages cannot be calculated with mathematical certainty. * * * However, damages will not be awarded based on mere speculation and conjecture. * * * The plaintiff must show entitlement to damages in an amount ascertainable with reasonable certainty. * * * In assessing prospective damages, the trier of fact can only consider damages which are reasonably certain to follow the injury complained of." (Citations omitted.) Barker v. Sundberg (Oct. 25, 1993), Ashtabula App. No. 92-A-1756, unreported, at 4, 1993 Ohio App. Lexis 5112.
 As part of their request for damages in this action, appellees sought three types of future damages in relation to J.R. Hollobaugh: future pain and suffering, future medical expenses, and future lost income. As to the first type of these damages, the courts of this state have held that a jury instruction can be given on this issue when there is some evidence from which it could be found that future pain and suffering are reasonably certain to occur. Patton v. Cleveland (1994), 95 Ohio App.3d 21, 30. In addition, it has been held that the probability of future pain and suffering must be demonstrated by expert testimony when the nature of the injury is not obvious. Corwin v. St. Anthony Med. Ctr. (1992), 80 Ohio App.3d 836, 841.
In applying the foregoing basic principles, the First Appellate District has indicated that an instruction for future pain and suffering was warranted when: (1) one physician testified that the plaintiff would "probably" suffer permanent difficulty as a result of the injury to her back; (2) a second physician stated that, in all likelihood, the plaintiff would continue to have problems with her back for some time in the future; and (3) the second physician further stated that she would continue to have back pain, especially when she engaged in strenuous activity. Roberts v. Mut. Mfg. Supply Co. (1984), 16 Ohio App.3d 324,325-326.
In the instant case, Dr. Robert Gilliland expressly testified that the soft tissue injury to J.R. Hollobaugh's back had been caused by the tire accident and that this injury was permanent in nature. Gilliland also stated that J.R. would never be able to work as a lineman again because his back could not take the strain of that type of work.
Although Dr. Gilliland's testimony, in and of itself, was not sufficient to establish future pain and suffering, the trial transcript indicates that a licensed psychiatrist, Dr. John Sorboro, stated that the back injury had caused J.R. to fall into a state of serious depression which will continue into the future and will need additional treatment. In addition, a psychiatric social worker, Charles Boris, testified that Hollobaugh's need for psychiatric intervention will be permanent because he will continue to have psychiatric problems as he tries to find a new job and deals with family problems.
Taken as a whole, the testimony of appellees' three experts witnesses constituted some evidence which, if believed, demonstrated to a reasonable certainty that J.R. will continue to experience psychological problems as a result of his back injury. Thus, the trial court did not err in instructing the jury on the issue of future pain and suffering.
As to the second type of future damages, both Sorboro and Boris testified that J.R. would need future treatments for his depression and his other psychological problems. Sorboro further testified that he usually charged $65 per session. Accordingly, the trial court did not err in instructing the jury on the issue of future medical expenses.
In regard to the last type of future damages, the courts of this state have concluded that a plaintiff must satisfy two elements before he can be entitled to future lost wages. First, a plaintiff must prove to a reasonable certainty that the injury he sustained will deprive him of the ability to earn the same wages he made before he was hurt. Second, he must submit evidence specifically showing the extent to which his earning ability has been impaired. See Ratliff v. Colasurd (Apr. 27, 1999), Franklin App. No. 98AP-504, unreported, at 14-15, 1999 Ohio App. Lexis 1985.
Given that Dr. Gilliland expressly stated that the injury to Hollobaugh's back would stop him from ever working as a lineman again, and assuming that he was employed at his highest potential, the trial transcript readily indicates that appellees presented some evidence which satisfied the first prong of the test for future lost wages. Thus, our resolution of this issue will turn on whether appellees were able to establish the extent to which he lost his earning ability. In Ratliff, at 17, the appellate court held that, to satisfy the second prong, a plaintiff must show what the difference is between the amount he was able to earn before the injury and the amount he is able to earn presently.
In Barker, supra, the only evidence the plaintiff submitted concerning his present earning potential was that, as a result of the injuries to his shoulder and back, he could no longer do the specific work he had done before the injury. In upholding the granting of a directed verdict on the issue of future lost wages, the Eleventh Appellate District stated:
 "[The plaintiff's] evidence established nothing more than the fact that he was no longer able to meet the physical demands of running his own grocery store. Assuming arguendo that [the plaintiff's] injuries forced him to sell his store, there was no evidence that he was not able to get another job. The evidence only showed that [the plaintiff] could not hold a job which required him to do any lifting. There was no evidence that [the plaintiff] lacked the physical ability or skills to obtain a sedentary job. [The plaintiff] had made no effort to obtain a job which did not challenge his physical limitations." Barker at 7, 1993 Ohio App. Lexis 5112.
 Like the plaintiff in Barker, appellees failed to present any evidence at trial proving to what degree Hollobaugh's earning ability is reduced. First, this court would note that appellees did not present any expert testimony indicating that J.R. will not have the ability to hold any type of employment in the future; instead, their evidence only established that J.R. cannot be a lineman. Second, the record shows that no testimony was given indicating what type of job J.R. could perform and what type of income he could earn. Therefore, while appellees' evidence might support the inference that Hollobaugh's earning power in the future will be less, there was no evidence upon which the jury could reasonably ascertain what the actual difference in his earning potential will be.
As appellees failed to present sufficient evidence to satisfy the second prong of the test for future lost income, the trial court erred in instructing the jury on this type of future damages. In this respect, appellants' second assignment of error has merit. Thus, because appellee J.R. Hollobaugh was not entitled to recover $75,000 for future lost earnings, the trial court's judgment as to him must be reduced by that amount. As to the other two types of future damages, this assignment lacks merit.
In their next assignment, appellants maintain that the trial court erred in denying their dual motion for a new trial and for judgment notwithstanding the verdict. As the basis for this assignment, appellants simply reassert the basic arguments that they raised in the prior two assignments.
Pursuant to our discussion under the second assignment, we conclude that the trial court erred in not granting the post-judgment motion as to the issue of future lost wages. To that extent, the third assignment of error has merit. In all other respects, the third assignment is not well taken.
Under their final assignment of error, appellants argue that the trial court's decision to grant prejudgment interest in favor of appellees was not supported by the evidence presented in the case. Focusing primarily upon the claims of J.R., appellants contend that their settlement offers were sufficient to show that they had made a good faith effort to settle the case because the evidence presented at trial demonstrated that there was a serious factual dispute as to whether J.R. had actually been hit by the tire and whether his injuries had been as extensive as alleged.
Pursuant to R.C. 1343.03(C), a trial court can award prejudgment interest in a tort action if it finds that the party who is required to pay a money judgment failed to make a good faith effort to settle the litigation and the opposing party did not fail to make the same effort to settle. In interpreting this statute, the Supreme Court of Ohio has formed a four-prong test to determine whether a party has failed to make the requisite effort to settle:
 "A party has not `failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." Kalain v. Smith (1986), 25 Ohio St.3d 157, syllabus.
 In applying the Kalain test, a trial court is given considerable discretion in deciding whether to grant prejudgment interest in a given case; thus, an appellate court will only reverse a trial court's decision when the record shows that there has been an abuse of discretion. Detelich v. Gecik (1993), 90 Ohio App.3d 793, 795. Consistent with this standard, it has further been held that a decision on a motion for prejudgment interest will be upheld when it is supported by some competent, credible evidence. Doyle v. Fairfield Machine Co., Inc. (1997), 120 Ohio App.3d 192, 223.
In the instant case, appellees did not contest the fact that appellants had cooperated in discovery and had not tried to unnecessarily delay any part of the proceeding. Thus, under the Kalain test, the trial court's decision to award prejudgment interest could have only been justified if it found either that appellants did not rationally evaluate the risks and potential liability in the case, or that appellants had failed to make a good faith offer to settle.
In regard to the settlement negotiations of the parties, the evidence presented to the trial court shows that, at the start of the case, appellees made a formal offer to settle the entire case for $1,000,000. After the case had been pending for over thirty months, appellants made their first and only counteroffer approximately twelve days prior to the scheduled trial date. In this counteroffer, appellants offered to give J.R. $50,000 and Christine $25,000. In response to this, appellees' counsel informally told counsel for appellants that his clients would not accept anything less than $375,000.
In arguing that their one counteroffer was sufficient to satisfy their obligation to make a good faith effort to settle, appellants assert that their evaluation of the potential for liability supports the reasonable conclusion that the claim of J.R. Hollobaugh was not as large as appellees believed. However, our review of the entire trial transcript shows that there was some competent, credible evidence indicating that appellants' conclusion was not reasonable.
First, as to whether J.R. was actually hit by the tire, the trial transcript indicates that J.R. was the only witness to give direct testimony on this point, and that appellants did not present any evidence to refute it. Although appellant Huff testified that he only saw Christine get hit, he also admitted that he could not see everything that was occurring, because the dump truck was moving as he watched the tire rolling through the yard. Finally, we would note that each of the witnesses, who testified in regard to the events following the accident, stated that, although he refused treatment from the paramedics, J.R. did state that he had been hit by the tire.
As to the extent of the back injury, appellants place heavy emphasis upon the fact that the second doctor who treated J.R. released J.R. from his care, four months after the accident. However, this particular doctor never saw J.R. again, after January 1997. Appellees presented the testimony of three other medical and psychological professionals who each stated that Hollobaugh's continuing problems were tied to the injury he had sustained in the accident. Again, appellants did not present any evidence refuting appellees' witnesses on this point. Although appellants tried to demonstrate that J.R. was exaggerating his injury, appellees' witnesses gave plausible explanations for certain statements in the medical records which might be interpreted as showing that J.R. was malingering.
Taken as a whole, the record shows that appellees presented substantial evidence that Hollobaugh's medical and psychological problems were significant, while appellants submitted minimal evidence in response. Under these circumstances, the trial court could have reasonably concluded that appellants had not evaluated the risks of litigation in a rational manner and that their counteroffer had not been made in good faith.
In relation to Christine, the record indicates that appellants' offer to her only covered her own injuries. That is, appellants' offer did not include compensation for her loss of consortium claim. Furthermore, the record shows that when appellees made a final offer to settle Christine's claim for $35,000, appellants did not respond to the offer, even though it was only $10,000 higher than appellants' prior counteroffer.
Because the trial record contains some competent, credible evidence that appellants failed to make a good faith effort to settle and that appellees did make such an effort, the trial court did not abuse its discretion in awarding prejudgment interest to appellees on the jury verdict. Accordingly, the fourth assignment of error lacks merit.
Pursuant to our discussion under the second and third assignments of error, the judgment of the trial court is modified to the extent that appellee J.R. Hollobaugh is only entitled to recover a total of $325,000 from appellants. In all other respects, including the award of $100,000 to appellee Christine Hollobaugh and the award of prejudgment interest and costs, the judgment of the trial court is affirmed as modified.
HON. ROBERT A. NADER, P.J., HON. JOSEPH E. O'NEILL, J., HON. JOSEPH DONOFRIO, J.