[Cite as *Weaver v. Kraft*, 2016-Ohio-3300.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

BRAD A. WEAVER, ET AL.

    Plaintiffs-Appellees

-vs-

MARC C. KRAFT, ET AL.

    Defendants-Appellees


CHARLES HARSH

    Defendant-Appellant

JUDGES:
Hon. Sheila G. Farmer, P.J.
Hon. William B. Hoffman, J.
Hon. John W. Wise, J.

Case No. 15CAE060046,
        15CAE090073



O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Delaware County Court of Common Pleas, Trial Court Case No. 13 CV H 02 0124 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | June 3, 2016 |
| APPEARANCES: | |

For Plaintiff-Appellee

WARREN S. GEORGE
SHAUN YOUNG
ARIEL M. LIPSKY
Keis George LLP
55 Public Square, Suite 800
Cleveland, Ohio 44113

For Defendant-Appellant

ROGER H. WILLIAMS
HOLLY A. FACER
CHRISTINA N. WILLIAMS
Williams, Moliterno & Scully Co., LPA
425 W. Schrock Road, Ste 201
Westerville, Ohio 43081

*Hoffman, J.*

**{¶1}** In Delaware App. No. 15 CAE 06 0046, defendant-appellant Charles Harsh appeals the March 2, 2015 Judgment Entry Compensatory Damages and May 13, 2015 Judgment Entry Denying Defendant Charles Harsh's Motion for New Trial entered by the Delaware County Court of Common Pleas. In Delaware App. No. 15 CAE 09 0073, Appellant appeals the August 24, 2015 Judgment Entry entered by the same court which, in part, awarded prejudgment interest to plaintiffs-appellees Brad A. Weaver, et al.

STATEMENT OF THE CASE AND FACTS

**{¶2}** On February 11, 2013, Appellee Brad Weaver, as administrator of the Estate of Heidi Hecker, as parent and natural guardian of Appellee Peyton Weaver, and individually, filed a wrongful death and personal injury action against Appellant and Marc Kraft, alleging negligent entrustment, negligent hiring and retention, and respondeat superior, and seeking compensatory as well as punitive damages. The complaint arose from a motor vehicle collision caused by Kraft, which took the life of Heidi Hecker, Brad Weaver's fiancé and Peyton Weaver's mother, and severely injured Appellees. Appellant filed a timely answer to the complaint, denying liability.[1]

**{¶3}** The parties engaged in extensive discovery. Prior to trial, the parties entered into numerous stipulations. Pertinent to this Appeal, the parties stipulated: 1) Appellant entrusted his Toyota Tundra to Marc Kraft, and Kraft was driving the vehicle with permission from Appellant; 2) at the time of the accident, Kraft did not have a valid driver's license; 3) Kraft's Pennsylvania driving record reflects that his license was

---

[1] Kraft is not a party to this Appeal. He is currently serving a 29½ year prison sentence.

suspended in the year 2004 until the year 2037 and he was designated as a "habitual offender; and 4) Kraft's negligence was the proximate cause of the November 8, 2012 collision involving Appellee Brad Weaver's vehicle as well as the proximate cause of the death of Heidi Hecker and the injuries of Appellees.

{¶4} Also prior to trial, Appellant filed a motion in limine to bar Jane Gray, Ph.D., Appellees' expert witness, from testifying. Appellees retained Dr. Gray to give opinions on whether or not Appellant's hiring and screening and background checks were reasonable as an employer. The trial court denied Appellant's motion and Dr. Gray ultimately testified at trial. Appellant further objected to Appellees taking the video deposition of Gareth Muller, manager of Labor Ready, the temporary staffing agency outside of which Appellant met Kraft. Appellees maintained Muller's testimony was relevant and probative on the issue of negligent hiring and retention as well as the reasonable care of an employer. The trial court overruled Appellant's objections.

{¶5} The jury trial commenced on February 17, 2015. The following evidence was adduced at trial:

{¶6} On September 30, 2012, Appellant was returning from a trip to the store when he stopped at Labor Ready, a temporary staffing agency, to find an employee to work for him. Appellant had contacted Labor Ready on a prior occasion when he was in search of workers. When he arrived at Labor Ready, Appellant observed Kraft sitting on the steps of the building. Appellant asked Kraft if he was looking for work. When Kraft indicated he was, Appellant asked him what kind of work he could perform. Kraft replied he was "a jack of all trades." Appellant offered Kraft $8/hour, cash, unreported and untaxed. Appellant agreed to pick up Kraft the next morning and drive him to work. When

Appellant asked where Kraft lived, Kraft informed Appellant he was homeless and had been staying outside near Labor Ready. Appellant agreed to pick up Kraft the next morning in the Labor Ready parking lot.

{¶7} At the time, Kraft had been registered with Labor Ready as a general laborer for approximately one year, working mainly labor and construction jobs. Kraft was never asked to drive while performing work through Labor Ready.

{¶8} Appellant was a sole proprietor, who owned a number of rental properties. Over the years, Appellant hired workers to assist with the maintenance and upkeep of his properties. Appellant never inquired of these workers' backgrounds or verified information about the workers' backgrounds. He never contacted the Bureau of Motor Vehicles to check a worker's driving record despite the fact he had workers perform jobs which required driving.

{¶9} For one or two weeks, every day, Monday through Friday, Appellant picked up Kraft from the Labor Ready parking lot in the morning and dropped him off at the end of the workday. One day, Kraft informed Appellant the cardboard box which served as his shelter had been stolen or destroyed. Appellant invited Kraft to live, rent free, in one of his rental properties, which was vacant at the time. Appellant continued to pick up Kraft each morning and drop him off at the end of each workday. Kraft performed a variety of jobs for Appellant. Some of the jobs required Kraft to drive. Appellant never asked to see Kraft's driver's license, but Kraft had shown Appellant his Pennsylvania state ID card.

{¶10} On November 8, 2012, Appellant pick up Kraft as had become the routine. Kraft worked on one of Appellant's vehicles that day. At approximately 1:30pm, Appellant informed Kraft he was going to have lunch or coffee with a friend. Appellant told Kraft to

use the Toyota Tundra to drive himself home when he was finished working. Appellant had loaned Kraft the truck to drive to and from work on at least one prior occasion. On this day, Kraft finished working around 3:00pm, after which he left in Appellant's truck and drove to a bar where he consumed two beers. Kraft left the bar, stopped at a store and purchased a twelve pack of beer before arriving at the rental property. Kraft consumed two or three more beers then left the house to buy cigarettes. Kraft brought a couple of beers with him to drink on the ride to the store. Kraft purchased cigarettes at a mini-mart. While there, Kraft saw a friend who purchased a malt beverage for him. Kraft picked up a female friend. He stopped at Subway to "cut a cup" in which to put the malt beverage.

{¶11} At approximately 8:42pm, Kraft rear-ended a vehicle driven by Appellee Brad Weaver, which was stopped at an intersection. Appellee Brad Weaver's fiancé, Heide Hecker, was fatally injured in the crash. Appellee Brad Weaver and his and Hecker's 10 month old daughter, Appellee Peyton Weaver, sustained injuries as a result of the collision.

{¶12} Appellees' expert witness Dr. Jane Gray, a sociologist and criminologist, stated, for over 27 years, she has worked as a consultant on business practices relative to the hiring and retention of employees. Dr. Gray testified, "there's a potential for harm to the public when you're hiring somebody and you do not do the appropriate background checks." Dr. Gray opined Appellant did not properly screen Kraft during the hiring process. Dr. Gray continued, if Appellant had done so before entrusting his vehicle to Kraft, the fatal November 8, 2012 accident could have been prevented.

{¶13} Appellees played the videotaped deposition of Gareth Muller as part of its case-in-chief. Muller testified Labor Ready has a background check policy in place.

Labor Ready conducts a background check on each worker, and confirms a worker has a valid driver's license before the worker is hired to do a job which involves driving. Muller noted Labor Ready would not permit a worker with a suspended license or a worker who could not produce a driver's license to do a job which required driving. Muller noted Kraft was a registered worker with Labor Ready and if Appellant had inquired about hiring him, Kraft would have been subject to a background check.

{¶14} At the close of Appellees' case, both parties moved for directed verdicts on the negligent entrustment, and negligent hiring and retention claims. Appellant argued Kraft's actions on the night of the accident were outside the scope of his employment. Appellees countered the actions of Appellant and Kraft combined to cause the accident, and the scope of employment is not an element of negligent hiring and retention. The trial court denied both parties' motions for directed verdict, finding the issues were for the jury "to decide in terms of foreseeability and the standard of care that was shown by [Appellant]." Tr. at 653.

{¶15} After hearing all the evidence and deliberating, the jury returned a general verdict in favor of Appellees and against Appellant and Kraft in the amount of $2,683,455.00. The jury found Appellant liable for negligent entrustment as well as negligent hiring and retention. The jury completed interrogatories. Interrogatory No. 1 read: "Do you find by the greater weight of the evidence that [Appellant] was negligent in entrusting his motor vehicle to Defendant Marc C. Kraft on November 8, 2012?" The jury answered, "Yes." The interrogatory is signed by all eight jurors. Interrogatory No. 2 read: "Do you find by the greater weight of the evidence that [Appellant] was negligent in the hiring and/or retention of Defendant Marc C. Kraft?" The jury answered, "Yes." The

interrogatory is signed by all eight jurors. The jury entered a verdict in favor of Appellant on the issue of punitive damages. The trial court memorialized the verdicts via Judgment Entry Compensatory Damages filed March 2, 2015.

{¶16} Appellant filed several post-trial motions including a motion for new trial. In his motion for new trial, Appellant conceded scope of employment was not an element of a claim of negligent hiring and retention. In addition, Appellant argued the trial court should have excluded the testimony of Dr. Gray as there was no evidence of Appellant "hiring" Kraft, Kraft was not an employee, and Appellant was not an employer. Via Judgment Entry filed May 13, 2015, the trial court denied Appellant's motion for new trial, repeating its finding the scope of employment is not an essential element of a negligent hiring/retention claim. The court also found there was evidence of an employment relationship between Appellant and Kraft.

{¶17} Appellees filed numerous post-trial motions as well, including a motion for prejudgment interest. Appellant filed a memorandum in opposition. The trial court conducted an oral hearing on Appellees' motions for prejudgment interest, attorney fees, and punitive damages on May 15, 2015.

{¶18} On June 11, 2015, Appellant filed a Notice of Appeal, appealing the trial court's March 2, 2015 Judgment Entry Compensatory Damages, and May 13, 2015 Judgment Entry Denying Defendant Charles Harsh's Motion for New Trial. Via Judgment Entry filed August 24, 2015, the trial court granted prejudgment interest in favor of Appellees. The August 24, 2015 judgment entry included a certification under Civ. R. 54(B).

**{¶19}** It is from the March 2, 2015 Judgment Entry Compensatory Damages and May 13, 2015 Judgment Entry Denying Defendant Charles Harsh's Motion for New Trial Appellant appeals in Delaware App. No. 15 CAE 06 0046. It is from the August 24, 2015 Judgment Entry Appellant appeals in Delaware App. No. 15 CAE 09 0073. Appellant assigns the following as error:

**{¶20}** "I. THE TRIAL COURT ERRED IN DENYING A DIRECTED VERDICT FOR APPELLANT ON APPELLEES' NEGLIGENT HIRING AND/OR RETENTION CLAIM. (*TRANSCRIPT*, P. 653)

**{¶21}** "II. THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING THE PREJUDICIAL TESTIMONY OF APPELLEES' FORESEEABILITY EXPERT JANE GRAY, PH.D. (*TRANSCRIPT*, PP. 484-546)

**{¶22}** "III. THE TRIAL COURT ABUSED ITS DISCRETION IN PERMITTING THE JURY TO HEAR THE IRRELEVANT AND PREJUDICIAL TESTIMONY OF GARETH MULLER. (*TRANSCRIPT*, P. 339)

**{¶23}** "IV. THE TRIAL COURT ABUSED ITS DISCRETION IN GRANTING THE PLAINTIFFS [SIC] PREJUDGMENT INTEREST. (*JUDGMENT ENTRY*, AUG. 24, 2015, PP. 3-5)"

I

**{¶24}** In his first assignment of error, Appellant maintains the trial court erred in denying his motion for directed verdict on Appellees' negligent hiring and/or retention claim.

**{¶25}** The two-issue rule holds where there are two causes of action, or two defenses, thereby raising separate and distinct issues, and a general verdict has been

returned, and the mental processes of the jury have not been tested by special interrogatories to indicate which of the issues was resolved in favor of the successful party, it will be presumed that all issues were so determined; and that, where a single determinative issue has been tried free from error, error in presenting another issue will be disregarded. *M & M Winfield, L.L.C. v. Huntington Mtge. Co.,* 5th Dist. No. 2014 AP 07 0027, 2015-Ohio-583, ¶ 20, quoting *H.E. Culbertson Co. v. Warden,* 123 Ohio St. 297, 303 (1931).

**{¶26}** In the instant action, the jury rendered a general verdict in favor of Appellees. The jury answered interrogatories, however, they did not indicate which claim was determinative of their verdict or the amount of damages awarded for each claim. Given that a general verdict was rendered in this case, any error the trial court may have made in denying Appellant's motion for directed verdict on Appellees' negligent hiring and/or retention claim was not prejudicial to Appellant because there existed a separate and independent basis for finding him liable to Appellees.

**{¶27}** Appellant's first assignment of error is overruled.

II, III

**{¶28}** In his second assignment of error, Appellant asserts the trial court abused its discretion in admitting the expert testimony of Dr. Jane Gray. In his third assignment of error, Appellant contends the trial court abused its discretion in admitting the testimony of Gareth Muller.

**{¶29}** Dr. Gray's testimony focused on the issue of Appellant's negligence in hiring and retaining Kraft as well as the issue of foreseeability. Muller's testimony was relative

to the issue of negligent hiring and retention as well as the reasonable care of an employer.

**{¶30}** Assuming, arguendo, the trial court erroneously admitted the testimony about which Appellant complains, I find any error arising therefrom would not constitute an abuse of discretion because of the application of the two-issue rule.

**{¶31}** Appellant's second and third assignments of error are overruled.

IV

**{¶32}** In his final assignment of error, Appellant contends the trial court erred in awarding prejudgment interest.

**{¶33}** An appellate court's review of a trial court's award of prejudgment interest is governed by an abuse of discretion standard. *Landis v. Grange Mutual Insurance Co.* (1998), 82 Ohio St.3d 339, 695 N.E.2d 1140. In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.

**{¶34}** R.C. 1343.03(C), which governs the award of prejudgment interest in a tort action, provides:

**{¶35}** If, upon motion of any party to a civil action that is based on tortious conduct, that has not been settled by agreement of the parties, and in which the court has rendered a judgment, decree, or order for the payment of money, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the

money is to be paid did not fail to make a good faith effort to settle the case, interest on the judgment, decree, or order shall be computed.

**{¶36}** The party requesting the prejudgment interest bears the burden of demonstrating that the other party failed to make a good faith effort to settle the case. *Broadstone v. Quillen*, 162 Ohio App.3d 632, 2005-Ohio-4278, 834 N.E.2d 424, ¶ 27, citing *Loder v. Burger* (11th Dist.1996), 113 Ohio App.3d 669, 674, 681 N.E.2d 1357.

**{¶37}** "A party has not 'failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party." *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 159, 495 N.E.2d 572. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Id.*

**{¶38}** The decision as to whether a party's settlement efforts indicate good faith is generally within the sound discretion of the trial court. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 482 N.E.2d 1248. This court will not overturn a finding on this issue unless the trial court's actions indicate an abuse of discretion.

**{¶39}** I do not interpret *Kalain* as requiring all four criteria to be applicable to find a lack of good faith. The criteria articulated in *Kalain* were used to conclude a good faith was made. In *Detelich v. Gecik* (1993), 90 Ohio App.3d 793, 797, 630 N.E.2d 771, the 11th District found both the first and third prongs of the *Kalain* test for good faith were uncontroverted; nevertheless, the appellate court found a lack of good faith solely on a finding the appellant failed to rationally evaluate his risk.

**{¶40}** On June 24, 2014, after completion of discovery and the submission of all of Appellees' expert reports on liability and damages, Appellees made an initial demand of $425,295.66, which represented one-third of Appellant's assets. Appellant responded with an offer of $20,000. The parties engaged in mediation prior to trial. Counsel for Appellees advised counsel for Appellant Appellees were willing to accept $300,000, to resolve all claims against Appellant. Appellant increased his initial offer to $40,000, and indicated this was not his best and final offer. Appellant's $40,000 offer upset Appellee Brad Weaver and he left the room. At that point, the mediator acknowledged the parties were too far apart and suggested the counsel for both parties talk. Following the mediation, Appellant made no further offers to settle the case.

**{¶41}** As to the first factor relevant to whether Appellant made a good faith effort to settle, neither party argues on appeal nor does the record demonstrate, Appellant did not cooperate during discovery.

**{¶42}** The second factor focuses on whether Appellant rationally evaluated the risks and potential liability of going to trial. The trial court found Appellant "did not rationally evaluate his risks and potential liability for negligent entrustment or negligent hiring" August 24, 2015 Judgment Entry on Punitive Damages and Judgment Entry Granting Attorney Fees and Judgment Entry Granting Plaintiffs' Motion for Prejudgment and Post Judgment Interest and Judgment Entry Granting Plaintiffs' Motion to Tax Costs at 4. The trial court noted Appellant "had a huge exposure with the number of real estate holdings, held lien free", and "[t]he settlement demand would have resulted in a loss of value of a third of those holdings". *Id.* The trial court added "[t]he evidence did show that Kraft was given more freedom in use of the truck than merely raking leaves." *Id.*

**{¶43}** With respect to the third factor, the trial court found no evidence was presented to establish Appellant attempted to unnecessarily delay the proceedings.

**{¶44}** The fourth and final factor looks to whether Appellant, in fact, made a good faith settlement offer or responded in good faith to an offer from Appellees. Appellees reduced their initial demand by over $100,000. In response, Appellant raised his offer $20,000. He made no further attempts to settle the matter before or during trial. The jury ultimately awarded Appellees $2,683,455.00.

**{¶45}** Although a lack of good-faith effort to settle is not demonstrated simply by comparing the amount of a settlement offer to the verdict actually returned by a jury, a substantial disparity between an offer and a verdict is one factor circumstantially demonstrating whether a party made a good-faith offer to settle or the adverse party failed to do so. *Szitas v. Hill*, 165 Ohio App.3d 439, 444, 2006-Ohio-687, citing *Andre v. Case Design, Inc.,* 154 Ohio App.3d 323, 2003-Ohio-4960, 797 N.E.2d 132, ¶ 15. Here, Appellant's final settlement offer of $40,000, was less than 2% of what the jury awarded Appellees. The determinative factor is not the amount of Appellant's final offer, but rather the fact the offer was not objectively reasonable given the facts of this case.

**{¶46}** Having reviewed the entire record, I conclude the trial court did not abuse its discretion in determining Appellant did not make a good faith effort to settle the case prior to trial thus granting the Appellees' motion for prejudgment interest.

**{¶47}** Accordingly, Appellant's fourth assignment of error is overruled.

**{¶48}** The judgment of the Delaware County Court of Common Pleas is affirmed.

By: Hoffman, J.,

Wise, J. concurs separately,

Farmer, P.J. dissents.

*Farmer, P.J., dissents*

{¶49} I respectfully dissent from the majority's application of the "two issue" rule in determining Assignments of Error II and III.  Although I have embraced the two-issue rule in other cases, I would depart from the general application of the rule in this case.

{¶50} I base my opinion upon the error of permitting Dr. Gray's testimony, as her testimony constituted an opinion on an issue the jury was called upon to decide: foreseeability.  Foreseeability is a legal issue and is barred under Evid.R. 704.  Dr. Gray's testimony invaded an area specifically reserved for the jury.

{¶51} Also, Mr. Muller's opinion did not qualify under Evid.R. 702, as he offered a lay opinion in the area of corporate hiring and not individual hiring.

{¶52} These two opinions, although given on the negligent hiring claim, were egregious enough to color and bias the jury's decision.

{¶53} I would grant Assignment of Errors II and III, reverse the jury's verdict, and remand the matter for a new trial.

*Wise, J., concurring*

{¶54} I concur with the majority's disposition of appellant's assignments of error. I write separately to acknowledge the dissent's view that in certain cases, the evidence could be so prejudicial on one cause of action so as to effect the judgment and/or damage award on another cause of action. However, I do not find such to be the case in the cause *sub judice.*