SZITAS et al., Appellant,

v.

HILL, Appellee.

[Cite as Szitas v. Hill, 165 Ohio App.3d 439, 2006-Ohio-687.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 85839.

Decided Feb. 16, 2006.

440

**442**

Gibson, Brelo, Ziccarelli & Martello and Eric W. Tayfel, for appellant.

Ritzler, Coughlin & Swansinger, Ltd., and David P. Stadler, for appellee.

KARPINSKI, Presiding Judge.

{¶ 1} Appellant, Maureen Szitas,[1] appeals the trial court's denial of her motion for prejudgment interest. For the reasons that follow, we reverse the trial court's judgment.

{¶ 2} This case arises from a three-car motor vehicle accident on May 1, 2000. Appellant was injured when the car she was driving was struck by a vehicle driven by appellee, Howard Hill. Upon impact, her rear window was blown out, and appellant was pushed into the vehicle in front of her, which was driven by Tito Houston.[2] Appellee admitted liability in appellant's case but not the nature or extent of her injuries. Appellant was diagnosed with sprains of the cervical spine, the thoracic spine, and both shoulders.

{¶ 3} Appellant initially filed suit (the "first case") in April 2002.[3] Almost one year later, on April 9, 2003, the day trial was to begin, appellant voluntarily

---

1. Her Husband, Brad Szitas, also filed a claim for loss of consortium. This claim apparently did not survive and is not an issue on appeal.

2. Appellee's insurer settled Houston's injury claims in December 2000.

3. Case No. 468617.

dismissed her case without prejudice because her medical expert was not available for trial.[4]

{¶ 4} Then, on April 22, 2003, appellant refiled the case.[5]

{¶ 5} The parties agree that, just before the first case was voluntarily dismissed, appellee had offered appellant $3,215.56 to settle the case. It is also agreed that up until March 10, 2004, the day trial began in the case at bar, appellant's settlement demand was $12,000, which was based upon her medical bills totaling $2,089.19, lost wages of approximately $130, and pain and suffering. On the day of trial, however, appellant reduced her demand to $7,500. Appellee's settlement offer remained at $3,215.56.

{¶ 6} The parties proceeded to a jury trial. The jury returned a $7,000 verdict in appellant's favor.

{¶ 7} Appellant filed a motion for prejudgment interest. After a hearing, on August 17, 2004, the trial court denied appellant's motion. It is from this judgment that appellant appeals, presenting a single assignment of error:

Trial court erred in denying appellant's motion for prejudgment interest.

{¶ 8} Appellant argues that the trial court erred in denying her motion for prejudgment interest. We agree.

{¶ 9} On appeal, a trial court's decision to grant or deny a party's request for prejudgment interest is reviewed under an abuse-of-discretion standard—namely, whether the trial court acted unreasonably, arbitrarily, or unconscionably. *Algood v. Smith* (April 20, 2000), Cuyahoga App. Nos. 76121 and 76122, 2000 WL 426554, at *7, citing *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 482 N.E.2d 1248. As long as there is some competent, credible evidence supporting the trial court's judgment, that judgment will not be disturbed on appeal. *Id.*

{¶ 10} R.C. 1343.03(C) authorizes the award of prejudgment interest in civil cases alleging tortious conduct:

Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to

---

4. The day before trial was set, appellant filed a motion to continue the trial. The court never ruled upon this motion.

5. Case No. 499742.

settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.

Subsection (C) gives the trial court discretion in deciding whether to award prejudgment interest. *Evans v. Dayton Power & Light Co.*, Adams App. No. 03CA763, 2004-Ohio-2183, 2004 WL 928297, at ¶ 71.

 {¶ 11} In determining the question of prejudgment interest, Ohio courts follow *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 159, 25 OBR 201, 495 N.E.2d 572, in which the Ohio Supreme Court held:

> A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party.

We do not interpret Kalain as requiring all four criteria to be denied to find a lack of good faith. The criteria articulated in Kalain were used to conclude that good faith was used. In *Detelich v. Gecik* (1993), 90 Ohio App.3d 793, 797, 630 N.E.2d 771, the 11th District found that both the first and third prongs of the Kalain test for good faith were uncontroverted; nevertheless, the appellate court found a lack of good faith solely on a finding that appellant failed to rationally evaluate his risk.

### A. Failure to Cooperate in Discovery

 {¶ 12} In the case at bar, appellant argues that she is entitled to prejudgment interest, in part because appellee failed to cooperate in discovery in her first case.

{¶ 13} In the first case, appellee failed to respond to appellant's discovery requests (for answers to interrogatories and a deposition) for an entire year and then only after the case had been voluntarily dismissed and refiled and a motion for summary judgment granted.

{¶ 14} The court in *Allied Erecting & Dismantling Co. v. Youngstown* (June 24, 2004), Mahoning App. No. 03 MA 179, 2004-Ohio-3665, 2004 WL 1542073, at ¶ 22, provides guidance on what constitutes a failure to cooperate in discovery:

> The Ohio Supreme Court has not provided any guidance regarding what is or is not "full cooperation in discovery." Nevertheless, we agree with Judge Connor's statement that "the crux of [a] court's inquiry when examining cooperation in discovery is to assure that the parties were not deprived of information necessary to make a well-informed decision with respect to settlement." *Watson v. Grant Med. Ctr.*, 123 Ohio Misc.2d 40, 2003-Ohio-2704, 789 N.E.2d 1175, ¶ 39; see, also, *Borucki v. Skiffey*, 11th Dist. Nos. 2000-T-0029, 2000-T-

0057, 2001-Ohio-4340, 2001 WL 1077854 (Defendant did not fully cooperate in discovery since his failure to inform his attorney of certain facts caused his attorney to evaluate the case at a much lower level). There is no general rule defining when a party has failed to fully cooperate in discovery and [sic] nor should there be. A bright-line would take some of the discretion away from the trial judge and it could potentially hide the realities of any particular situation.

{¶ 15} Initially, appellant states that she filed a motion in the first case to continue the trial set for April 9, 2003, citing appellee's "non-compliance with discovery." When that motion was denied, appellant implies, she "was forced" to voluntarily dismiss the case. Id. The record and the trial court's own findings, however, do not support these assertions. In findings of fact, the trial court stated:

[Appellant] filed a motion to continue the lawsuit on April 8, 2003 citing the unavailability of [the] medical expert, Dr. Edward M. Gabelman.

{¶ 16} The record does not demonstrate that the trial court ever "denied" her motion to continue the trial. Appellant voluntarily dismissed the case the day after she filed her motion to continue.

{¶ 17} The record shows that appellant refiled this case in April 2003. Appellee received service of the complaint on or about June 30, 2003. On or about August 11, 2003, appellant noticed appellee's deposition for September 11, 2003. Appellee then filed an untimely answer on September 18, 2003. Appellant spent time and money filing a motion to strike that answer.

{¶ 18} Appellant further argues that appellee failed to cooperate in discovery in the refiled case. To support her argument, she points to the trial court's award of sanctions against appellee.

{¶ 19} Appellant had filed a motion for sanctions in which she cited appellee's failure to answer interrogatories and his failure to appear at his deposition. In her motion, appellant requested that appellee be precluded from testifying at trial. Appellant also requested $224.40 to reimburse her attorney for time and expenses incurred when appellee failed to appear for his deposition.

{¶ 20} Partially granting appellant's motion, the trial court filed the following entry:

11/06/2003 N/A JE final pre trial held. Plaintiff's motion to strike defendants [sic] answer as untimely filed is denied. Plaintiff's motion for sanctions is granted in part. Defendant is ordered to pay plaintiff $224.40 for expenses incurred due to failure of defendant to appear for deposition and failure of defendant to cooperate with discovery requests. Defendant shall pay the $224.40 prior to the date of trial or face additional sanctions. Defendant shall

appear for deposition at the time and place of plaintiff's choosing. Failure to comply will result in the issuance of an immediate arrest warrant plus monetary sanctions.[6]

{¶ 21} On November 6, 2003, appellee was sanctioned for his failure to appear at his September 18, 2003 deposition. Appellee did not submit to a deposition until November 11, 2003. Sanctions were also granted for his delay in filing answers to interrogatories.

{¶ 22} At the hearing on appellant's motion for prejudgment interest, Cynthia Green, claims analyst for appellee's insurer, acknowledged that appellee had failed to appear for his first deposition and that he had taken months to answer appellant's interrogatories. Green admitted that appellee's conduct constituted a failure to cooperate with the discovery process.

{¶ 23} The history of this case demonstrates a pattern of delays on the part of appellee. In the first case, appellee failed to respond to appellant's discovery request for an entire year. He responded only after the case had been voluntarily dismissed and refiled and a motion to compel and for sanctions granted. In *Copp v. Clagg* (1990), 66 Ohio App.3d 211, 583 N.E.2d 1086, the defendants did not answer certain interrogatories until the trial court ordered them to do so. From this evidence, the appellate court found that the defendants did not fully cooperate in discovery. Similarly, in *Klinebriel v. Smith* (Feb. 6, 1996), No. 94CA1641, 1996 WL 57947, the Fourth Appellate District agreed that defendants had failed to fully cooperate in discovery for failing to produce some requested documents.

{¶ 24} Appellee delayed in timely filing an answer to appellant's complaint. He also delayed his deposition and his responses to appellee's interrogatories. Appellee's pattern of delay in this case unnecessarily prolonged discovery and the parties' ability to evaluate their respective positions about settlement. The longer appellee delayed discovery, the longer it took for the parties to be able to evaluate the case for settlement purposes.

{¶ 25} From the record before this court, we conclude that appellee failed to cooperate in discovery. The dissent complains that there is no evidence that the failure to cooperate impacted the offer of the settlement and believes that the court sanctions sufficed. This limited view does not give much value to professionalism or the lack of it in itself. Advocacy should not be a test of patience, should not drain opposing counsel's time, and should not waste resources just because the total liability is modest.

---

**6.** We note that the record does not reflect that appellee paid the $224. In oral argument, appellant denied this was paid.

{¶ 26} The first prong of *Kalain*, 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, therefore, is satisfied.

## B. The Settlement Offer

{¶ 27} All parties are expected to make an honest effort to settle a case. Id. However, when a party has "a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer." *Iammarino v. Maguire*, Cuyahoga App. No. 80827, 2003-Ohio-2042, 2003 WL 1930344, at ¶ 11.

{¶ 28} At the hearing required by R.C. 1343.03(C), the moving party must present evidence that it made a reasonable settlement offer, while the other party failed to make a good faith effort to settle the case. *Kalain*, supra. The trial court must consider "such factors as the type of case, the injuries involved, applicable law, and the available defenses." *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 34, 734 N.E.2d 782; see, also, *Cashin v. Cobett*, Cuyahoga App. No. 84475, 2005-Ohio-102, 2005 WL 77057.

{¶ 29} Appellant argues that in part, appellee should have made a settlement offer to her much earlier. During the prejudgment hearing, Green stated that she was justified in not making a settlement offer before April 2003 because she had not received notes from appellant's family physician, Dr. Hahn. Appellee argues that it was appellant's responsibility to obtain the doctor's notes. The parties do not dispute, however, that appellant saw Dr. Hahn only once, two days after the May 1, 2000 accident. The record further demonstrates that, as of March 31, 2003, appellant advised appellee that Dr. Hahn's bill for the single visit would not be included as part of appellee's settlement demand. Therefore, Dr. Hahn's notes could hardly be so essential to the settlement process.

{¶ 30} The history of negotiations is consistent with the pattern of procrastination in appellee's response to discovery requests. Green stated that she conveyed her offer before the first case was dismissed in April 2003. The case was refiled April 22. At the final pretrial on November 6 in the second case, the insurer maintained its offer of $3,215. Appellee, moreover, responded always on the eve of trial or, in the case of discovery request, only when compelled. Such inflexibility must be evaluated in light of the objectively reasonable belief of appellee.

{¶ 31} "The lack of good-faith effort to settle is not demonstrated simply by comparing the amount of a settlement offer to the verdict actually returned by a jury[,] [a]lthough a substantial disparity between an offer and a verdict is one factor circumstantially demonstrating whether a party made a good-faith offer to settle or the adverse party failed to do so * * *." *Andre v. Case Design, Inc.*, 154 Ohio App.3d 323, 2003-Ohio-4960, 797 N.E.2d 132, ¶ 15. Here, appellee's

settlement offer of $3,215 is less than half of what the jury awarded appellant, $7,000.

{¶ 32} "The question of whether a good-faith effort to settle a case has been made depends on whether the amount of the offer was based on an objectively reasonable belief." *Andre,* 154 Ohio App.3d 323, 2003-Ohio-4960, 797 N.E.2d 132, ¶ 18, citing *Galmish,* 90 Ohio St.3d 22, 35, 734 N.E.2d 782; *Kalain,* 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572. The underlying question, then, is whether appellee rationally evaluated his risks and potential liability in this case. To make such a determination, it is not dependent on whether parties were prejudiced by any delays, as the dissent argues. The dissent completely ignores the striking failure of Green to apply the criteria she expressly articulated. We look not only at when the settlement offer was made, but also at the amount of the offer and what factors appellee used in deciding that amount.[7]

{¶ 33} Appellant argues that Green arbitrarily used the property damage to her vehicle as the sole criterion in evaluating the settlement value of her case. Green claims, however, she did not rely solely upon appellant's property damage to evaluate the settlement value. During the hearing, Green testified that in order to assess a plaintiff's damages, including pain and suffering, she uses "the length of treatment and the amount of damage to the vehicle." Green's own testimony, however, demonstrates she never applied her stated criteria to appellant's case.

{¶ 34} Green described how she arrived at the settlement value of appellant's case and the corresponding value of Tito Houston's claims:

Q: * * * Just to get a couple points out. Maureen Szitas is pushed into the vehicle in front of her, [sic] claimant in that case is Tito Houston[?]

A: Right.

Q: That's correct?

A: Yes.

Q: Property damage for Mr. Houston was $1258.66 and I think I tabbed that probably A. Is that accurate?

A: Yes.

---

7. We acknowledge appellant's argument that appellee should have considered other factors in its damages assessment, such as appellant's demeanor as a witness. We need not speculate, however, about whether appellee's consideration of other factors would have been more reasonable since the two criteria appellee admits to using (length of treatment and vehicle damage) are dispositive of the issue of whether appellee rationally evaluated his risks and potential liability.

Q: And I think I tabbed B there, Mr. Houston's audit for his medical expenses file. It indicates Miss Szitas's medical expenses were 2089. Mr. Houston's were less than that. Is that correct as well?

A: Yes.

Q: If you refer to Exhibit C, Mr. Houston's claim was settled for $3600. $3700.[8]

A: That's correct.

Q: That's more than Miss Szitas was ever offered, is that correct?

A: That's correct.

Green further admitted that appellant's property damage (approximately $1,800) was higher than Houston's as well.

{¶ 35} Despite Green's statement that she used the length of a claimant's treatment to evaluate the value of a case, it is unclear whether or how Green applied that factor when she calculated the settlement value of Houston's case.[9] What is clear, however, is that using the "length of treatment" variable without considering the amount of a claimant's medical expenses is a patently unreasonable method of assessing the value of a case.

{¶ 36} Appellant incurred more in property damage and medical expenses than Houston, yet appellee offered Houston more to settle than it offered appellant. Appellee fails to explain how, if Green applied the criteria of treatment and property damage to appellant and Houston equally, she nonetheless valued Houston's claims to be worth more. Appellee's settlement with Houston is also unreasonable because the undisputed damage to appellant's vehicle demonstrated the substantial force of the impact: it was so violent that the impact blew out her rear window. Nonetheless, Houston received a higher settlement without any evidence of the type of damage his vehicle sustained. We must conclude that Green ignored her own stated criteria. This failure is the most striking part of the evidence, and the trial court abused its discretion in ignoring it.

{¶ 37} From the record before this court, we conclude that the settlement offer was not based on a rational evaluation of appellee's risks or his potential liability with regard to appellant. The second prong of *Kalain*, 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, is met.

---

8. Houston's settlement check for $3700 specifies "FINAL SETTLEMENT OF CLAIM ARISING FROM BODILY INJURY CAUSED BY ACCIDENT ON 05/01/00." The $3700, therefore, was separate from damages to the car.

9. The transcript from the prejudgment hearing does not refer to the length of Houston's medical treatment as a result of the May 1st accident.

## C. Whether Appellee Made a Good Faith Offer or Response

{¶ 38} Appellant argues that appellee did not make a good faith offer to settle the case.[10] Since we have already concluded that appellee's settlement offer to appellant, as compared to what was offered to Houston, was not based on a rational evaluation, we further conclude that its offer to appellant was not a good faith offer.

{¶ 39} Moreover, appellee's failure to respond to appellant's substantially reduced settlement demand[11] on the day of trial also demonstrates a lack of good faith. Appellee did not make a counteroffer to settle even after appellant dropped her demand by $4,500. Since appellee did not dispute liability and never rebutted appellant's medical evidence, it was not reasonable to ignore such a reduced demand. The failure to counter with an increased settlement offer constitutes a lack of good faith. The fourth and final element of *Kalain*, 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572, is satisfied.

{¶ 40} After reviewing the entire record in this case, we conclude that there is little evidence, let alone competent, credible evidence, supporting the trial court's decision to deny appellant's motion for prejudgment interest. The record shows that appellee had a pattern of procrastination and that his settlement offer was objectively unreasonable because it was based on stated criteria that was applied unevenly. In ignoring that record, the trial court abused its discretion. Accordingly, we reverse the judgment of the trial court and remand this matter for a determination of the amount of prejudgment interest to which plaintiff is entitled.

Judgment accordingly.

ROCCO, J., concurs.

MCMONAGLE, J., dissents.

CHRISTINE T. MCMONAGLE, Judge, dissenting.

{¶ 41} Respectfully, I dissent.

{¶ 42} This matter involves a three-car accident that occurred in 2000. Appellant was injured when the appellee struck her car in the rear. As a result of this impact, appellant's car was pushed into the vehicle in front of her, driven by Tito Houston. Houston settled his claim with the insurer approximately six months after the accident.

---

10. Appellant does not argue and we do not address the third element of *Kalain*, namely, that a party has unnecessarily delayed the proceedings. As we said earlier, *Kalain* does not require all four criteria to find a lack of good faith.

11. Appellant's demand dropped from $12,000 to $7,500.

{¶ 43} Appellant first filed suit in this matter in April 2002. On April 9, 2003, she voluntarily dismissed that action because her medical expert was not available for trial. She refiled the case later that same month. The parties agree that the medical bills in this matter were $2,089.19, and the lost wages were approximately $130. At all times up to the day of trial, appellant's demand for settlement was $12,000. At all times up to and including the day of trial, appellee's offer of settlement was $3,215.56. On the trial date, appellant reduced her demand to $7,500; appellee did not increase his offer. The jury returned a verdict in favor of appellant in the amount of $7,000. Appellant filed for prejudgment interest, and the court, after a full hearing on the matter, denied the request.

{¶ 44} I concur with the majority's statement that review in this matter is had upon an abuse-of-discretion standard and that to reverse the decision of the trial court, appellant must demonstrate that the decision to deny prejudgment interest was arbitrary, capricious, unconscionable, and without support in the record.

{¶ 45} An award of prejudgment interest involves the determination of factual issues by the trial court. *Black v. Bell* (1984), 20 Ohio App.3d 84, 87, 20 OBR 105, 484 N.E.2d 739. Accordingly, this court should not reject the trial court's findings when they are supported in the record by some competent evidence. Id. at 88, 20 OBR 105, 484 N.E.2d 739; cf. *Cox v. Fisher Fazio Foods, Inc.* (1984), 13 Ohio App.3d 336, 13 OBR 414, 469 N.E.2d 1055 (decision supported by sufficient evidence) with *Hardiman v. Zep Mfg. Co.* (1984), 14 Ohio App.3d 222, 14 OBR 250, 470 N.E.2d 941 (decision unsupported in the record).

{¶ 46} The majority finds that appellee failed to make a good faith effort to settle based upon several criteria. The first criterion is that appellee failed to cooperate in discovery. The record would support that finding. However, the majority ignores the fact that the trial judge confronted appellee's behavior and promptly sanctioned him. The majority does not address the issue of whether there was any nexus between appellee's dilatory response to discovery and the timing or amount of his settlement offer. While the appellee was, in fact, uncooperative in providing answers to interrogatories and in attending a deposition, the issue of the appellee's liability in the accident was stipulated. No evidence was produced at the hearing that the information sought from appellee was relevant at all to the issue of damages. Appellee's dilatory conduct was appropriately sanctioned by the trial court, and there is no showing whatsoever that his behavior impacted the case in any fashion that has not already been addressed through financial sanctions.[12]

---

12. It should be noted that appellee's deposition was not requested during the first filing of the case, and the request for continuance filed by appellant in the first case cited only the

{¶ 47} I would find that the first criterion set out in *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 25 OBR 201, 495 N.E.2d 572—"whether the party has fully cooperated in discovery proceedings"—should be analyzed further to determine whether the failure of full cooperation had any effect whatsoever on settlement and whether the failure to cooperate was otherwise addressed by the trial court in sanctions. In the instant case, I would find that while there was a failure of full cooperation by appellee, it was redressed by the court in financial sanctions and did not impact the offer of settlement in either amount or time.

{¶ 48} The majority then finds that appellee did not rationally evaluate risks and potential liability. In support of this contention, the majority cites the fact that the other "innocent" person in this accident settled with appellee for $400–$500 more than was offered to appellant, even though appellant's medical expenses were greater (in an amount unknown). I reject the position of the majority that one can analyze potential risks and liabilities by proving that someone else in an accident received a higher settlement offer. There is no evidence whatsoever in the record to inform this court about the details of Houston's medical expenses, lost wages, injuries, or the duration and nature of treatment. Further, the difference between the settlement offers is negligible.[13]

{¶ 49} The majority also concludes that appellee should have made a settlement offer to appellant "much earlier than April of 2003." As noted above, this case was not even filed until April of 2003, and service was not obtained thereon until July of that same year. (The previous case was dismissed *by appellant* when she was unable to obtain the presence of a witness on the day of trial. There is no indication in the record that there were discovery problems in that matter.)

{¶ 50} Finally, the majority argues that appellee's "failure to respond to appellant's substantially reduced settlement demand on the day of trial demonstrates a lack of good faith."[14] However, the majority does not address the fact that apparently there was no new information on the day of trial that might

---

unavailability of her expert witness for trial, not any failure of discovery. The case at bar was filed April 22, 2003. Service upon appellee was completed July 2, 2003, a case management order entered August 19, 2003, a final pretrial held November 11, 2003, and trial commenced March 10, 2004; completion of service to date of trial consumed only eight months. To suggest that appellee's behavior unreasonably delayed the verdict in this case is surely not supported by this record.

13. $3,700 versus $3,215.56.

14. The majority does not address at all appellant's $12,000 demand extant up to the day of trial. If it is significant that the ultimate verdict in this matter was approximately twice the offer, it is likewise significant that the outstanding demand up until the day of trial was almost twice the verdict.

compel appellee's re-evaluation of the case. In *Carmo v. Frankel* (1984), 17 Ohio Misc.2d 3, 17 OBR 190, 477 N.E.2d 1244, plaintiffs' demand prior to trial was $500,000. They reduced their demand to $180,000 on the day of trial and refused defendant's final offer of $150,000. The jury awarded plaintiffs $175,000. The court ruled that it would be unfair to award the plaintiffs prejudgment interest because they did not make a good faith demand until the day of trial. Simply because appellant reduced an unreasonable demand moments before trial does not require, at peril of prejudgment interest, a concomitant increase in appellee's offer.

{¶ 51} Accordingly, I would find that while appellee was indeed tardy in discovery responses, the tardiness was addressed by the trial court in sanctions, and the record reflects no prejudice to the proceedings that might animate consideration of prejudgment interest. I further reject the proposition, advanced by the majority, that this court should evaluate the reasonableness of an offer of settlement by considering a settlement achieved by another party to the case, the facts of whose injuries are totally unknown. Even if the facts were known, and even if by some legal miracle the claimants and their claims were found to be all but identical, I certainly would not find that a less than $500 difference between the two indicates one of the offers to be so unreasonable as to implicate prejudgment interest. Finally, I would hold that appellant's 11th-hour reduction of her demand (there being no other relevant facts or circumstances) did not trigger a concomitant obligation in the appellee to increase his offer.

{¶ 52} I find there was ample support in the record for the decision of the trial judge and that he did not abuse his discretion in denying prejudgment interest in this matter. Accordingly, I would affirm the decision of the trial court.