OPINION
{¶ 1} Appellants Lucien Pruszynski, ("Lucien"), Robert Pruszynski and Laurel Pruszynski (the "Pruszynskis"), appeal from a judgment of the Geauga County Court of Common Pleas, denying the Pruszynskis' motion for prejudgment interest against appellees, Sarah Reeves, ("Reeves"), Charles Kaufman, a.k.a., Charles Kaufman, III, ("Kaufman, III"), Charles Kaufman a.k.a., Charles Kaufman, Jr. ("Kaufman, Jr."), Dinah Kaufman, a.k.a., Dinah Zirkle, ("Zirkle"), (collectively referred to as "Kaufmans"), Vance H. Van Driest ("Van Driest"), and Denise Van Driest, a.k.a., Denise Deitz, ("Dietz"), (collectively referred to as "Van Driests").
 {¶ 2} The relevant facts are as follows. Lucien was injured on March 24, 2000, when the driver of the car in which he was a passenger, Reeves, crashed the car into a ditch where it rolled several times. Reeves was swerving to avoid bicycles driven by Kaufman, lll and Van Driest. Neither Kaufman, III nor Van Driest, minor children at the time, had lighting or reflectors on their bicycles.
 {¶ 3} On November 25, 2002, the Pruszynskis filed a complaint against the appellees. Their claim against Reeves alleged negligent operation of a vehicle and failure to control it. Their claims against the Van Driests and Kaufmans related to the operation of a bicycle without appropriate reflectors, reflective clothing, and the derivative acts of Kaufman, III's, and Van Driest's parents.[1]
 {¶ 4} Appellees timely answered the complaint denying negligence. Cross claims were filed by and between all three sets of the parties. Defense for all appellees was provided by insurance companies. State Farm Mutual Automobile Insurance Company, ("State Farm") defended Reeves. Farmers Insurance Company, ("Farmers") defended the Van Driests. Nationwide Mutual Fire Insurance Company ("Nationwide") provided a defense for the Kaufmans.
 {¶ 5} On October 14, 2003, the trial court conducted a pretrial. The parties were unable to resolve the lawsuit at the pretrial. The case was originally scheduled for trial on June 8, 2004. However, on May 14, 2004, the parties filed a motion to continue the trial pending the outcome mediation. The motion was granted and the trial was continued to October 19, 2004.
 {¶ 6} Mediation was unsuccessful. State Farm offered $33,333.33, one-third of its policy limits, with indemnification, and no settlement offers were made by Nationwide, within its $300,000 policy limits, or Farmers, which had a $100,000 policy limit. Trial commenced on October 19, 2004. On the day of trial, the Pruszynskis reduced their demand of settlement to $200,000. In response, State Farm raised its offer to $50,000, and Nationwide and Farmers offered $35,000 each, for a total of $120,000 offer as to all appellees. The offer was refused and the trial proceeded.
 {¶ 7} At trial, the Pruszynskis established that medical bills in the amount of $51,540.26 had been incurred as a result of injuries from the March 24, 2000 accident. As a result of the accidents, Lucien fractured his right ankle, partially tore a ligament in his right ankle, ruptured three ligaments in his left knee, damaged his meniscus, and sustained permanent cartilage damage to his left knee. The Pruszynskis provided the only expert medical testimony offered at the trial. Patrick Hergenrodere, M.D., testified that as a result of the March 24, 2000 accident, Lucien sustained serious and permanent injuries which necessitated surgery and would require additional future treatment. At the close of their case, the trial court granted the Pruszynskis' motion to direct a verdict as to the negligence of Kaufman, III and Van Driest. The trial court instructed the jury that Kaufman and Van Driest were negligent as a matter of law for failure to comply with R.C. 4513.03 and R.C. 4511.56
regarding lights and illumination devices required to be placed on their bicycles. On October 21, 2004, the jury returned a verdict in favor of the Pruszynskis in the amount of $231,540.26, and assessed negligence as follows: Reeves, 5 percent; Kaufman, lll and Van Driest, 25 percent; and each set of parents, Dietz, Kaufman, Jr. and Zirkle, 35 percent. Stated differently, the combined share of the Kaufmans and Van Driests verdict was 95 percent, $219,963.24, and Reeves' share was 5 percent, $11,577.01.
 {¶ 8} The Pruszynskis then filed a motion for prejudgment interest on October 29, 2004. A brief in support, affidavit and documents were submitted with the motion. Appellees filed briefs in opposition to the motion for prejudgment interest. Pursuant to discovery, the Pruszynskis served subpoenas directly upon the insurance carriers which provided defense in the case, seeking pertinent claims filed information. Farmers and Nationwide refused to produce certain documents, and Nationwide filed a motion for in-camera inspection to determine if certain documents were privileged. In the meantime, the Pruszynskis filed a supplemental brief in support of their motion for prejudgment interest on December, 16, 2004, attaching the partial responses to the subpoenas, including documents received from the claims files of the insurance companies. The court did not rule on Nationwide's motion for protective order. On December 21, 2004, the trial court denied the Pruszynskis' motion for prejudgment interest, without conducting a hearing or identifying the basis for its decision in its judgment entry.
 {¶ 9} It is from that judgment that appellants filed a timely notice of appeal setting forth the following assignments of error for our review:
 {¶ 10} "[1.] Whether the trial court erred by denying appellants' motion for prejudgment interest (T.d. 104; T.d. 126) without conducting a hearing or providing any reasons for its ruling. (T.d. 128).
 {¶ 11} "[2.] Whether the trial court erred by denying the motion for prejudgment interest (T.d. 104; T.d. 126) when the record reveals that appellants satisfied all of the requirements under Ohio Rev. Code 1343.03(C) for granting prejudgment interest (T.d. 1128)."
 {¶ 12} We shall first address the Pruszynskis' second assignment of error as it is dispositive of this appeal.
 {¶ 13} R.C. 1343.03(C) governs the award of prejudgment interest. It states: Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, "the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case."
 {¶ 14} The trial court is vested with the discretion to decide whether a party has made a good faith effort to settle a case. Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83,87. Thus, the trial court's decision will not be overturned absent a showing of abuse of discretion. Ziegler v. WendelPoultry Serv., Inc. (1993), 67 Ohio St.3d 10, 20. The "term `abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 15} In Kalain v. Smith (1986), 25 Ohio St.3d 157, 159, the Ohio Supreme Court held: "A party has not `failed to make a good faith effort to settle' under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceeding, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party." A party has not failed to make a good faith effort, if it has complied with all the above four factors. Stated differently, it is not necessary for all four criteria to be denied to find a lack of good faith. Szitas v.Hill, 8th Dist. No. 85839, 2006-Ohio-687, at ¶ 11, citingDetelich v. Gecik, 90 Ohio App. 3d 793, 797.
 {¶ 16} For purposes of prejudgment interest, a lack of "good faith" is not the equivalent of "bad faith." Kalain at 159. To determine whether a party has failed to make a good faith effort to settle under R.C. 1343.03(C), it is necessary only to applyKalain's four-prong test. Detelich at 797.
 {¶ 17} In the case sub judice, there is no allegation that the appellees failed to fully cooperate in discovery proceedings. Thus, the first prong of the Kalain test is uncontroverted. Nor is there evidence that any of the appellees attempted to unnecessarily delay the proceedings, as the third prong of the test prohibits.
 {¶ 18} The Pruszynskis argues that the insurance companies failed to rationally evaluate their risks and potential liability and as a result, failed to make good faith monetary settlement offers. Thus, they assert that the record supports a finding of lack of good faith based upon the second and fourth factors of the Kalain test.
 {¶ 19} "The lack of good-faith effort to settle is not demonstrated simply by comparing the amount of a settlement offer to the verdict actually returned by a jury. Although a substantial disparity between an offer and a verdict is one factor circumstantially demonstrating whether a party made a good-faith effort to settle or the adverse party failed to do so * * *." Andre v. Case Design, Inc., 154 Ohio App.3d 323, 328. "A rational evaluation of the risk of exposure assumes more than simply a defendant's admission of liability. The value of a case for settlement depends on a realistic assessment of defense strategy and tangibles such as the credibility of the opinions of medical experts as to causation, evidence of permanency, the effect of the injury on the plaintiff's quality of life, and the plaintiff's credibility and sincerity as a witness." Id. at 329.
 {¶ 20} In respect to State Farm, the Pruszynskis asserts that State Farm's highest settlement offer of $50,000 was inconsistent with the values and potential exposures as set forth in its claims files. We disagree.
 {¶ 21} The record reveals that State Farm made offers of settlement, rationally evaluated liability and actively sought settlement offers from the other tortfeasors in this case.
 {¶ 22} State Farm was the insurer for Reeves, the driver of the car in which Lucien was riding when the accident occurred. State Farm's evaluation of the case was from $175,000 to $225,000. The evidence reveals that when evaluating the claim, State Farm took into account reasonable and customary medical costs, medical evaluation, and Lucien's long term prognosis. State Farm also considered the issues of liability and comparative negligence of the Kaufmans and Van Driests. It is clear from the onset that State Farm identified the negligence per se of Kaufman, lll and Van Driest, and took the position that all three tortfeasors should share equally in any monetary settlement. State Farm offered an initial pre-suit offer of $33,333.33. This offer was never revoked and was renewed at mediation. On the day of trial, State Farm increased its offer of settlement to $50,000. The jury verdict assessed 5 percent comparative negligence against Reeves, $11,577.01. Thus, consideration of the disparity between State Farm's final offer and the jury verdict does not provide any evidence that State Farm lacked in good faith in its monetary offer to settle, underKalain.
 {¶ 23} This court further notes that the record shows that State Farm encouraged Nationwide and Farmers to cooperate in participating in settlement negotiations. The State Farm activity logs reveal the following:
 {¶ 24} June 14, 2004: "* * * We offered 1/3 of our limits, $33,333.33 as a restatement of our prior offer. Our position is that the other two defendants, bicyclists share an equal fault * * *. The carriers for the other two defendants are unwilling to make offers unless our limits are offered."
 {¶ 25} August 24, 2004: "Our position is that the two other defendants, bicyclists share an equal fault * * *. To date the other two carriers have not made any offers.
 {¶ 26} August 30, 2004: "The joint tortfeasor carriers [Nationwide and Farmers], continue to resist making any offers."
 {¶ 27} In reviewing the record, State Farm's offer was based upon a rational evaluation and thus, its offer was in good faith. Thus, the Pruszynskis' assignment of error as to State Farm is without merit.
 {¶ 28} We now address Nationwide and Farmers, insurers for the bicyclists and their parents. Nationwide was the insurer for the Kaufmans, and Farmers for the Van Driests. The Pruszynskis make several arguments that evidence in the record establishes that Nationwide and Farmers failed to rationally evaluate their risks and potential liability.
 {¶ 29} First, the Pruszynskis argues that Nationwide and Farmers unduly delayed any offer of settlement.
 {¶ 30} The record reveals Nationwide's and Farmers' position of no liability or very limited liability was not a rational assessment. Nationwide and Farmers failed to make any offers at the mediation hearing held on June 10, 2004. The first offer of settlement by Nationwide and Farmers did not occur until September 27, 2004, nearly two years after suit was filed. The joint offer of Nationwide and Farmers at that time was $24,000.00, $12,000 each. On October 1, 2004, their joint offer increased to $40,000. On October 19, 2004, the first day of trial, Nationwide and Farmers increased their offers to $35,000, each, for a total of $70,000. No additional offers were made by either during trial, even after the court granted the Pruszynskis' motion for a directed verdict as to the negligence of Kaufman, lll and Van Driest.
 {¶ 31} The Pruszynskis further contend that the negotiating position of Nationwide and Farmers was inconsistent with values and potential exposures as set forth in the records of their own claim files.
 {¶ 32} In a May 24, 2004 memo, Farmers' adjuster, Salvatore Nuzzo stated in pertinent part: "I concur with defense counsel that the verdict for this case will be in the $200,000-$250,000 range should the jury apply full contribution to the two bicyclists * * * [.] Proceed with nuisance value attempts to settle in mediation if not successful in resolution proceed with trying the case."
 {¶ 33} Nationwide's activity logs and reports reveal the following:
 {¶ 34} "1/13/2003: [N]o offer was made."
 {¶ 35} "10/14/03: Attended * * * pretrial. I was only prepared to offer a few thousand dollars to stop expenses. We [Nationwide] hung firm on a no liability decision position and Farmers indicated `We will pay what [Nationwide] pays.' Judge indicated if we were only thinking of defense costs we would be going nowhere. * * * The judge finally set the case for trial * * *."
 {¶ 36} "4/12/04 Casualty File Evaluation: Considering the significant knee injury and strong possibility of multiple knee replacement surgeries and lifetime impact I would feel this filed could easily have a full value up to $250,000."
 {¶ 37} During the course of pretrial discovery, Lucien submitted to a medical exam by Robert Fumich, M.D. ("Dr. Fumich"), an orthopedic surgeon. Although Dr. Fumich was not called to testify at trial, his report was provided to the Pruszynskis. In his report, Dr. Fumich stated: "[Lucien] has permanent injury and more likely than not will require some future treatment and restriction of activities. With the brace, he should be able to return to some sports activities but will never return to same degree as he had prior to the accident. Running, jumping * * * will all be affected. * * * [M]ore likely than not, he will require a knee replacement later in life. Prognosis for the left knee is fair short term and poor long term." In addition, medical expenses of $51,540.26 associated with Lucien's injuries were uncontested, stipulated to by the parties, and included in the jury instructions at trial. It is clear that both Nationwide's and Farmers' offers of settlement fell far short of the severe extent of Lucien's known injuries and medical expenses incurred.
 {¶ 38} In response to the Pruszynskis' motion for prejudgment interest, Nationwide and Farmers argued that based upon issues of proximate cause and comparative negligence, they were justified on asserting claims of no liability and/or limited liability. We disagree.
 {¶ 39} When liability is clear, as in this case at bar, the policy of R.C. 1343.03(C) requires an insurer to make a determined effort to settle a claim prior to trial. Loder v.Burger (1996), 113 Ohio App.3d 669, 676; Guerrieri v. AllstateIns. Co., 8th Dist. Nos. 73869, 73870, 75132, 75133, 1999 Ohio App. LEXIS 4049, at 23. Nationwide and Farmers contend they believed the Pruszynskis' case was against Reeves, who was defended by State Farm. This argument must fail because it relies upon a determination of the degree of fault between the defendants. Nationwide and Farmers were aware that Kaufman, III and Van Driest were negligent as a matter of law for failure to comply with R.C. 4513.03 and R.C. 4511.56. Any negligence by Reeves would not exonerate Nationwide's and Farmers' insureds from liability in this matter. The trial court directed a verdict in favor of the Pruszynskis at the close of their case with respect to the negligence of those insureds. It is clear that Nationwide and Farmers chose to disregard factors of liability and the value of the claim.
 {¶ 40} We further note that both Nationwide and Farmers acknowledged in their claim filed records that under the joint and several liability statutes each could be held liable for the full verdict valued up to $250,000.
 {¶ 41} Although it is but one factor in determining lack of good faith, we agree with the Pruszynskis that there is a significant disparity between the settlement offers of Nationwide and Farmers and the jury verdict and assessment of negligence. The jury awarded $231,540.26 in damages. The jury found the Van Driests and Kaufmans to be 95 percent liable, in the sum of $219,963.24. Thus, there was a significant disparity between Nationwide's and Farmers' combined final settlement offers of $70,000, and compared to their share of the jury verdict. The record demonstrates that Nationwide and Farmers determined early on either to make no offer, and/or, an unfairly low, take it or leave it offer.
 {¶ 42} "The purpose of R.C. 1343.03(C) is to encourage litigants to make a good faith effort to settle their case, thereby conserving legal resources and promoting judicial economy." Peyko v. Frederick (1986), 25 Ohio St.3d 164,167. The Supreme Court of Ohio has observed that: "The statute was enacted to promote settlement efforts, to prevent parties who have engaged in tortious conduct from frivolously delaying the ultimate resolution of cases, and to encourage good faith efforts to settle controversies outside a trial setting." Kalain at
159.
 {¶ 43} From the record before this court, we conclude there was no rational evaluation risk exposure by Nationwide and Farmers. Thus, the second prong of Kalain is met. Since we conclude that Nationwide's and Farmers' settlement offers to the Pruszynskis were not based on a rational evaluation, we further conclude their offers were not in good faith. Thus, the fourth prong of Kalain is satisfied. The Pruszynskis' argument is well-taken.
 {¶ 44} Our inquiry does not end here. R.C. 1343.03(C) requires the party seeking prejudgment interest to prove they made a good faith effort to settle. Moskovitz v. Mt. Sinai Med.Ctr., 69 Ohio St.3d 638, 659; Gemberling v. Sepulveda, 11th Dist. No. 99-P-0088, 2000 Ohio App. LEXIS 6124, at 6.
 {¶ 45} The Pruszynskis submitted evidence demonstrating that they made good faith settlement demands and counter-proposals. At the outset of the case, they demanded $500,000. At mediation, they reduced their settlement demands to $450,000. In a June 11, 2004, letter to Nationwide and Farmers, counsel for the Pruszynskis expressed disappointment over their failure to present any settlement offer. In subsequent correspondence dated October 1, 2004, counsel on behalf of the Pruszynskis again urged settlement, expressing concern over the failure of Farmers and Nationwide to attempt good faith settlement. On the day of trial, the Pruszynskis reduced offer of settlement for $200,000 was unsuccessful.
 {¶ 46} We conclude that the Pruszynskis aggressively made attempts to settle, and Nationwide and Farmers failed to make good faith efforts to settle pursuant to Kalain. Thus, the Pruszynskis' second assignment of error as to Nationwide and Farmers is with merit.
 {¶ 47} Based upon our determination of the second assignment of error, the Pruszynskis' first assignment is rendered moot.
 {¶ 48} We conclude the trial court abused its discretion when it denied the Pruszynskis claim for prejudgment interest against Nationwide and Farmers. Accordingly, we affirm in part, and reverse in part, the judgment of the trial court denying prejudgment interest, and remand this matter for a determination of the amount of prejudgment interest against Nationwide and Farmers, pursuant to R.C. 1343.03(C).
O'Neill, J., Grendell, J., concur.
[1] In their complaint, the Pruszynskis sought judgment against appellees under joint and several liability.