PRUSZYNSKI et al., Appellants,

v.

REEVES et al.,Appellees.

[Cite as *Pruszynski v. Reeves*, 188 Ohio App.3d 677, 2010-Ohio-3677.]

Court of Appeals of Ohio,
Eleventh District, Geauga County.

No. 2009–G–2908.

Decided Aug. 6, 2010.

Dinn, Hochman & Potter, L.L.C., and Steven B. Potter, for appellants.

Williams, Moliterno & Scully Co., L.P.A., Roger H. Williams, and Joshua R. Angelotta, for appellee Sarah Reeves.

Pfau, Pfau & Marando and John C. Pfau, for appellees Charles Kaufman and Dinah Kaufman.

Koeth, Rice & Leo Co., L.P.A., Clark D. Rice, and Shawn W. Schlesinger, for appellees Vance H. Vandriest and Denise Marlene Vandriest.

COLLEEN MARY O'TOOLE, Judge.

{¶ 1} Lucien, Robert, and Laurel Pruszynski appeal from the judgment of the Geauga County Court of Common Pleas, denying their motion for prejudgment interest in a case arising from an automobile accident in which Lucien suffered serious and permanent injuries. We affirm.

{¶ 2} On the evening of March 24, 2000, Lucien Pruszynski was a front-seat passenger in a car driven by Sarah Reeves westbound on Woodin Road in Geauga

County, Ohio, when they suddenly came upon two bicyclists, Vance Van Driest and Charles Kaufman III. All these actors were minors. It was dark, and the road is, evidently, unlighted. There is evidence that Sarah was driving in excess of the speed limit. The evidence varied as to whether the boys were bicycling in the roadway or on the berm. In any case, Sarah swerved into the other lane to avoid the bicyclists; then, she turned too sharply back into her own lane and drove off of the road, flipping her car. Lucien suffered injuries, principally to his legs.

{¶ 3} November 25, 2002, Lucien and his parents filed a complaint against Sarah; Charles Kaufman III and his parents, Charles Kaufman, a.k.a. Charles Kaufman Jr., and Dina Kaufman, a.k.a. Dinah Zirkle; and Vance Van Driest, and his mother Denise Van Driest, a.k.a. Denise Deitz. *Pruszynski v. Reeves,* 11th Dist. No. 2005–G–2612, 2006-Ohio-5190, 2006 WL 2798257, at ¶ 3. The claims against Sarah were for negligent operation of her car and failure to control it. Id. Those against Charles and Vance, the bicyclists, related to the operation of bicycles without the appropriate reflectors and reflective clothing, while the claims against their parents related to negligent supervision. Id. All the defendants answered, denying liability; various cross-claims were filed. Id. at ¶ 4.

{¶ 4} Sarah was provided a defense under a policy of insurance with State Farm Automobile Insurance Company, with limits of $100,000; the Van Driests, under a policy with Farmers Insurance Company, also with limits of $100,000; and the Kaufmans, under a policy with Nationwide Mutual Fire Insurance Company, with limits of $300,000. It appears that all the insurance companies valued the Pruszynskis' claims at $175,000 to $250,000. However, Nationwide and Farmers believed that the liability of their insureds, the bicyclists and their parents, was limited, evidently setting each at 5 to 15 percent, with Sarah being principally liable.

{¶ 5} In October 2003, the trial court conducted a settlement conference. Evidently, the Pruszynskis requested $500,000, the policy limits of all defendants. After some indication that it would offer its policy limits, State Farm offered $33,333.33—one third of its policy.

{¶ 6} In June 2004, mediation occurred between the parties. The Pruszynskis lowered their demand to $425,000. The Kaufmans' attorney asserts that she offered $25,000 on behalf of her clients at the end of the mediation, which the Pruszynskis' attorney denies. State Farm continued to offer $33,333.33. It appears that Farmers and Nationwide premised any significant offer upon State Farm's offering its policy limits on behalf of Sarah, which it did not.

{¶ 7} In September 2004, Farmers and Nationwide offered $12,000 apiece, *Pruszynski,* 2006-Ohio-5190, 2006 WL 2798257, at ¶ 30, but then increased their

offer to a total of $40,000, October 1, 2004. Id. Finally, the morning of trial, Farmers and Nationwide increased their offers to $35,000 a piece, while State Farm offered $50,000. Id. at ¶ 22, 30. As the Pruszynskis could not lower their demand beneath $200,000, the matter went to trial. Cf. id. at ¶ 45. The trial court directed a verdict in the Pruszynskis' favor on the issue whether Vance Van Driest and Charles Kaufman III were negligent as a matter of law for failure to have proper reflective and/or illumination gear on their bicycles, but left the issue of proximate causation of the accident entirely in the jury's hands. October 21, 2004, the jury returned a verdict in the Pruszynskis' favor, in the amount of $231,540.26. Id. at ¶ 7. The jury found Sarah five percent responsible; the bicyclists, Vance and Charles Kaufman III, 25 percent responsible; and the boys' parents, 70 percent responsible. Id.

{¶ 8} "The Pruszynskis then filed a motion for prejudgment interest on October 29, 2004. A brief in support, affidavit and documents were submitted with the motion. Appellees filed briefs in opposition to the motion for prejudgment interest. Pursuant to discovery, the Pruszynskis served subpoenas directly upon the insurance carriers which provided defense in the case, seeking pertinent claims-filed information. Farmers and Nationwide refused to produce certain documents, and Nationwide filed a motion for in camera inspection to determine if certain documents were privileged. In the meantime, the Pruszynskis filed a supplemental brief in support of their motion for prejudgment interest on December, 16, 2004, attaching the partial responses to the subpoenas, including documents received from the claims files of the insurance companies. The court did not rule on Nationwide's motion for protective order. On December 21, 2004, the trial court denied the Pruszynskis' motion for prejudgment interest, without conducting a hearing or identifying the basis for its decision in its judgment entry." *Pruszynski,* 2006-Ohio-5190, 2006 WL 2798257, at ¶ 8.

{¶ 9} The Pruszynskis appealed, assigning two errors:

{¶ 10} " '[T]he trial court erred by denying appellants' motion for prejudgment interest * * * without conducting a hearing or providing any reasons for its ruling."

{¶ 11} "[T]he trial court erred by denying the motion for prejudgment interest * * * when the record reveals that appellants satisfied all of the requirements under Ohio Rev.Code 1343.03(C) for granting prejudgment interest * * *."

{¶ 12} This court focused on the Pruszynskis' second assignment of error, determining that the insurers for the Van Driests and Kaufmans, Farmers and Nationwide, did not make a good-faith effort to settle under the third prong of the test set forth in *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 159, 25 OBR 201, 495 N.E.2d 572: i.e., they had not rationally evaluated their risks and liabilities. *Pruszynski,* 2006-Ohio-5190, 2006 WL 2798257, at ¶ 28–43. We affirmed the

denial of prejudgment interest against Sarah and State Farm and remanded for a determination of the prejudgment interest owed by the bicyclists, their parents, and insurers. Id. at ¶ 48.

{¶ 13} The Van Driests and Kaufmans appealed to the Supreme Court of Ohio. *Pruszynski v. Reeves,* 117 Ohio St.3d 92, 2008-Ohio-510, 881 N.E.2d 1230, at ¶ 6. The court determined that we were without authority to order prejudgment interest, when the trial court had erroneously failed to set a date certain for an evidentiary hearing, as required under R.C. 1343.03(C). *Pruszynski,* 117 Ohio St.3d 92, 2008-Ohio-510, 881 N.E.2d 1230, at ¶ 21. The court reversed our judgment, and remanded the matter to the trial court for a hearing. Id. at ¶ 22.

{¶ 14} A hearing was held before the trial court. On June 26, 2009, it filed a judgment entry denying the motion for prejudgment interest. Citing principally this court's decision in *Stephenson v. R. & R. Sanitation, Inc.,* 11th Dist. No. 2002–P–0040, 2003-Ohio-5426, 2003 WL 22326954, the trial court determined that because there was a genuine dispute as to the proximate causation for the subject accident, it was not irrational for Farmers and Nationwide to refuse to settle.

{¶ 15} The Pruszynskis timely filed this appeal, assigning a single error:

{¶ 16} "The trial court abused its discretion by denying appellants' motion for prejudgment interest pursuant to R.C. 1343.03(C) when no sound reasoning or evidence supported the trial court's decision * * *."

{¶ 17} "R.C. 1343.03(C) governs the award of prejudgment interest. It states: Interest on a judgment, decree, or order for the payment of money rendered in a civil action based on tortious conduct and not settled by agreement of the parties, shall be computed from the date the cause of action accrued to the date on which the money is paid, if, upon motion of any party to the action, 'the court determines at a hearing held subsequent to the verdict or decision in the action that the party required to pay the money failed to make a good faith effort to settle the case and that the party to whom the money is to be paid did not fail to make a good faith effort to settle the case.'

{¶ 18} "The trial court is vested with the discretion to decide whether a party has made a good faith effort to settle a case. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 87[, 19 OBR 123], 482 N.E.2d 1248. Thus, the trial court's decision will not be overturned absent a showing of abuse of discretion. *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 20, 615 N.E.2d 1022. The 'term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.' *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219[, 5 OBR 481], 450 N.E.2d 1140.

{¶ 19} "In *Kalain v. Smith* (1986), 25 Ohio St.3d 157, 159[, 25 OBR 201], 495 N.E.2d 572, the Ohio Supreme Court held: 'A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceeding, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party.' A party has not failed to make a good faith effort, if it has complied with all the above four factors. Stated differently, it is not necessary for all four criteria to be denied to find a lack of good faith. *Szitas v. Hill,* * * * 165 Ohio App.3d 439[, 2006-Ohio-687], 846 N.E.2d 919 [¶ 11], citing *Detelich v. Gecik,* 90 Ohio App.3d 793, 797, 630 N.E.2d 771.

{¶ 20} "For purposes of prejudgment interest, a lack of 'good faith' is not the equivalent of 'bad faith.' *Kalain* at 159, 495 N.E.2d 572. To determine whether a party has failed to make a good faith effort to settle under R.C. 1343.03(C), it is necessary only to apply *Kalain's* four-prong test. *Detelich* at 797, 630 N.E.2d 771." *Pruszynski,* 2006-Ohio-5190, 2006 WL 2798257, at ¶ 13–16.

{¶ 21} As we noted above, the trial court cited this court's decision in *Stephenson v. R. & R. Sanitation, Inc.,* 2003-Ohio-5426, 2003 WL 22326954, for the proposition that when proximate causation for an accident remains at issue in a case, prejudgment interest on an award is inappropriate. In *Stephenson,* appellant sanitation worker stopped his truck in a traffic lane to load recyclables stacked on the roadside. Id. at ¶ 2. In doing so, he activated his truck's beacon, but failed to turn on either his marker lights or four-way hazard lights. Id. Appellee student was driving in the traffic lane where the sanitation truck was stopped and neither slowed down nor attempted to avoid it. Id. at ¶ 3. Appellee student struck the truck, then appellant. Id. Appellee gave several reasons for why he had failed to notice the truck. Id. at ¶ 4–5.

{¶ 22} Appellee brought an action against appellant and his employer for negligently operating and/or parking his sanitation truck. *Stephenson,* 2003-Ohio-5426, 2003 WL 22326954, at ¶ 6. Appellant counterclaimed for negligent operation of a motor vehicle. Id. At trial, the jury found each party negligent, but returned a general verdict in favor of appellant. Id. at ¶ 7. Appellant then filed a motion for prejudgment interest, based on the theory that appellant's insurer, Allstate, had failed to make a good-faith effort to settle. Id. at ¶ 8.

{¶ 23} "A hearing was held on the motion in front of the Magistrate. At the hearing, Allstate Insurance Company adjuster Carla Cornecelli, testified to her belief that appellant was entirely at fault for the accident in question. Her position was grounded upon the facts that appellant's truck was improperly parked on the road, appellant left his vehicle with the motor running, and appellant did not have overhead lights on the front of the truck. Moreover, Ms.

Cornecelli communicated her belief that appellee's statement in his deposition was more reliable than the statement made to [police following the accident]. Ms. Cornecelli based her belief on the fact that appellee made the statement to the [police] immediately following a serious accident of which he had no ostensible recollection and appellee was under oath when he was deposed." *Stephenson,* 2003-Ohio-5426, 2003 WL 22326954, at ¶ 8.

{¶ 24} Following the hearing, the magistrate issued a decision granting pre-judgment interest to appellant. *Stephenson* at ¶ 9. Appellee objected, and the trial court reversed the decision of the magistrate. Id. On appeal, this court affirmed the trial court judgment noting:

{¶ 25} "The issue of proximate cause was indubitably pivotal to the outcome of the instant case. Insofar as both parties to the lawsuit were ostensibly negligent, the jury's determination as to which party proximately caused the harm was instrumental in assessing liability. Thus, before the jury's verdict was announced, the question of proximate cause was a legitimate subject of debate between both parties to the suit. As such, the causal link between the accident in question and appellant's injuries was not so obvious as to render appellee's insurance adjustor's decision not to settle unreasonable.

{¶ 26} "The 'rational evaluation' prong of the *Kalain* test requires appellant to demonstrate that appellee did not rationally evaluate his risks and potential liability. Logically, a rational decision is one supported by reason. In the current matter, appellee had a rational basis for not settling; namely, he legitimately disputed his legal culpability as to appellant's injuries. To offer a settlement would be, at some fundamental level, admitting one's partial or full responsibility as to the harm caused. Because appellee had a reasonable, legal justification for disputing his liability, his decision not to offer to settle was rational. As such, appellee's legitimate dispute as to his liability indicates he rationally considered his risks and potential liability. Therefore, pursuant to *Kalain,* inter alia, appellee acted in good faith irrespective of his failure to make a settlement offer." *Stephenson,* 2003-Ohio-5426, 2003 WL 22326954, at ¶ 24–25.

{¶ 27} As the trial court observed, in this case, the Van Driests and Kaufmans and their insurers could rationally conclude that Sarah Reeves, as operator of the vehicle in which Lucien Pruszynski was riding at the time of the accident, was either the proximate cause, or at least the primary proximate cause, of his injuries. Consequently, their failure to settle cannot be deemed irrational and forms no basis for an award of prejudgment interest pursuant to R.C. 1343.03(C).

{¶ 28} The judgment of the Geauga County Court of Common Pleas is affirmed.

{¶ 29} It is the further order of this court that appellants are assessed costs herein taxed.

{¶ 30} The court finds there were reasonable grounds for this appeal.

Judgment affirmed.

GRENDELL, J., concurs.

CANNON, J., concurs in part and dissents in part.

CANNON, Judge, concurring in part and dissenting in part.

{¶ 31} I respectfully concur in part and dissent in part from the majority opinion.

{¶ 32} I am mindful of our standard of review and hesitate to disturb the trial court's finding in this case. I believe that the analysis of the trial court is correct in that consideration of proximate cause is separate and distinct from the issue of negligence. However, the trial court's reliance on *Stephenson v. R & R Sanitation, Inc.*, 11th Dist. No. 2002–P–0040, 2003-Ohio-5426, 2003 WL 22326954, is misplaced. In *Stephenson,* the trial court found a legitimate issue over whether the negligence of a truck driver, by illegally parking his truck, contributed to his own injuries. Id. The court in *Stephenson* determined that the defendant-appellee did not lack good faith in failing to make a settlement offer, as there was an issue of proximate cause throughout the litigation. Id. at ¶ 29. The court stated:

{¶ 33} "The issue of proximate cause was indubitably pivotal to the outcome of the instant case. Insofar as both parties to the lawsuit were ostensibly negligent, the jury's determination as to which party proximately caused the harm was instrumental in assessing liability. Thus, before the jury's verdict was announced, the question of proximate cause was a legitimate subject of debate between both parties to the suit. As such, the causal link between the accident in question and appellant's injuries was not so obvious as to render appellee's insurance adjuster's decision not to settle unreasonable." Id. at ¶ 24.

{¶ 34} In the instant case, there is no such issue. While it is correct that proximate cause was a concern, it *did not relate in any way* to the plaintiff. The issue regarding proximate cause was solely related to defendants. The assessment of plaintiff's fault in this case by all parties was zero percent; plaintiff was going to receive 100 percent of the value of the claim.

{¶ 35} The evidence submitted in support of the request for prejudgment interest was clear and virtually undisputed. Three defendants were involved in this matter, as well as three insurance carriers. All insurance carriers agreed that plaintiff was entitled to substantial damages. Their assessment of the value

of the claim ranged from (1) $150,000 to $200,000 (Nationwide); (2) $175,000 to $225,000 (State Farm); and (3) $200,000 to $250,000 (Farmers). Therefore, by the companies' own analyses, plaintiff was going to receive between $150,000 and $250,000 if the case went to trial, as there were no issues of contributory or comparative negligence by plaintiff. In fact, the jury awarded plaintiff over $230,000, just as predicted.

{¶ 36} Prior to trial, the parties ended negotiations with plaintiff at $200,000 and the defendants collectively at $120,000. The meaning of this is clear. Defendants, who were collectively 100 percent responsible for plaintiff's damages, never offered more than 80 percent of the lowest value of the claim. At a minimum, the final offer should have equaled $150,000. The failure to collectively offer this amount, an amount that they all acknowledged plaintiff *was going to receive*, amounted to a lack of good faith.

{¶ 37} The collective defendants profess that this is acceptable, as they could not determine among themselves who was more at fault. However, it is important to note that they *all acknowledged* some fault, and because of the potential for payment of the entire claim upon a finding of *any* fault, they cannot simply point their fingers at each other. It is an obvious lack of good faith to collectively fail to make an offer commensurate with an agreed amount due to plaintiff. The failure to make such an offer, in essence, required plaintiff to proceed to trial. If the defendants require a plaintiff to proceed to trial because the defendants cannot determine who owes the money, the purpose and intent of the prejudgment-interest statute is defeated.

{¶ 38} The date of the accident predated the amendment to the current joint-and-several-liability statute. As a result, if any of the defendants were found to be as little as 1 percent at fault, they could be liable for the entire amount of the claim, with a right of contribution from other tortfeasors. See former R.C. 2307.32. With regard to the percentage of fault among the tortfeasors, State Farm always acknowledged some fault on the part of its driver. The other carriers initially denied any wrongdoing; however, Nationwide recognized by March 3, 2004, that "a jury could find anywhere from 5–15% liability on each of the [bicyclists]." The adjuster from Farmers testified in his deposition that he had also placed this figure on each of the bicyclists. This uncontroverted evidence and the verdict of the jury belie the trial court's second alternative argument described in its entry, i.e., that only the driver was liable, as she was both negligent and the sole proximate cause of the accident. While it may be appropriate to advance such an argument at trial, it is not what the adjusters' internal assessment concluded, and therefore, it should have been recognized in settlement discussions.

{¶ 39} The trial court correctly observed the issue whether Nationwide and Farmers took a reasonable position that only the driver was the proximate cause of the accident. I believe, however, that the adjusters' files, the adjusters' testimony, and the finding of the jury suggest they did not. As previously noted, both the Nationwide and Farmers adjusters testified in deposition that they had assessed that the jury could find anywhere from 5 to 15 percent fault on both bicyclists. The jury's finding that the two bicyclists were 95 percent responsible for the accident strongly suggests that an assessment of 0 percent fault was unreasonable and not made in good faith.

{¶ 40} Primarily because they were all potentially liable under the old law, defendants collectively should have at least offered the minimum amount they *all* agreed was due to plaintiff. If this resulted in a settlement with plaintiff, defendants could proceed to resolve their cross-claims in court or interagency arbitration. I would affirm the trial court's ruling with regard to State Farm. State Farm offered, at some point, an amount greater than what its insured was ultimately obligated to pay. However, I would reverse and award prejudgment interest due to the lack of good faith by Nationwide and Farmers.